235 So.2d 267 (1970)
JACKSON READY-MIX CONCRETE, a Miss. Corp.
v.
Leroy SEXTON.
No. 45602.
Supreme Court of Mississippi.
April 13, 1970.
Rehearing Denied June 1, 1970.
*268 Cox & Dunn, Jackson, W.E. McIntyre, Jr., Brandon, for appellant.
Barnett, Montgomery, McClintock & Cunningham, Jackson, John C. McLaurin, Brandon, for appellee.
SMITH, Justice.
Jackson Ready-Mix Concrete, a Mississippi corporation, has appealed from a judgment of the Circuit Court of Rankin County recovered against it by Leroy Sexton, in a personal injury action. Sexton brought the suit against Allied Electric Company, Mississippi Power & Light Company and Ready-Mix. However, at the conclusion of plaintiff's case, motions of Mississippi Power and Allied Electric to exclude were sustained and they went out of the case. A similar motion by Ready-Mix was overruled and, upon the close of the evidence, a request by Ready-Mix for a directed verdict was also denied.
Among other errors assigned by Ready-Mix for reversal is that the trial court erred in failing to direct the jury to return a verdict in its favor.
Sexton, a licensed electrician, was an independent electrical contractor doing business as Leroy Sexton Electric Service. His experience in this specialized field had extended over a period of 30 years at the time of his injury. He operated his own establishment, with his own tools, appliances, truck and safety devices and employed his own assistants or helpers. He held himself out to the public as a skilled and experienced electrician.
Ready-Mix was engaged in a commercial manufacturing enterprise in which the use of electricity was incidental. It had no skilled or experienced electricians in its employ, and had contracted with Sexton from time to time to supply labor and materials for electrical jobs which required the services of an electrician with specialized skill and experience in the field.
Bills submitted to Ready-Mix by Sexton for services and materials prior to the time of his injury indicate that he had been paid more than $93,000 by Ready-Mix for those items between 1961 and 1965. Among the expert services performed by Sexton for Ready-Mix included numerous safety inspections of the electrical installations at its plant.
On the occasion of Sexton's injury, he had been called in by Ready-Mix to install an additional line on an existing pole belonging to and located upon the private premises of Ready-Mix. Sexton testified that he knew that these wires carried a 480 volt current of electricity and knew that the current was "on." He had worked on this particular pole at least twice previously, once at the very top.
*269 It was broad daylight and Sexton was in full possession of his faculties, when he began climbing the pole. No employee of Ready-Mix was present, his helper was his own employee, the method of doing the job was chosen by Sexton and he employed his own tools and selected which of the several safety devices (rubber gloves) he would use and which he would not use. On one former occasion when he had worked on this pole he had used a ladder but this time he elected to climb it instead.
Among the safety devices which he elected not to use, but which he had in his truck with him, was a rubber blanket for covering uninsulated wires and connections and electrical tape also suitable for that purpose. He did not request any assistance from Ready-Mix nor did he ask for advice or tools. He had climbed to a point where, as he expressed it, his eyes were "a hand's reach" from the wire, and was reaching around to fasten his safety belt when he brought his unprotected elbow into contact with an uninsulated kerney and received a shock, which caused him to fall to the ground and to injure himself severely.
There had been nothing to prevent his seeing the uninsulated kerney into contact with which he had brought his elbow, and he testified that he did see it immediately after his fall and from his position on the ground. He had not seen it before because he had not looked while trying to fasten his belt. It is alleged that Ready-Mix was negligent in failing to warn Sexton that the uninsulated copper fittings had darkened in the processes of natural weathering and in having too many lines on the pole for safety. However, it is clear from Sexton's own testimony that the exercise of the slightest care on his part could not have failed to disclose both of these conditions to him. In fact, he testified that he knew that weathering caused exposed copper to darken rapidly, and, of course, the number and location of the wires were readily apparent.
This was not, as alleged, a "dangerous trap" for an experienced and skilled electrician. This was a private installation on the private property of a consumer. It was not an installation of a public utility. Ready-Mix, like any lay consumer of electric energy, having an electrical problem, called in Sexton as a specialist to handle the job. In the light of Sexton's experience and familiarity with the dangers inherent in dealing with electricity and his knowledge of the Ready-Mix plant through his numerous inspections and particularly because of his personal work on this very pole, it is beyond question that no one knew more about the situation than did Sexton.
As an electrical contractor Sexton was a business invitee of Ready-Mix. The duty of an owner toward such an invitee is discussed in 65 C.J.S. Negligence § 63 (1966).
The owner, occupant, or person in charge of property owes to an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety. The reasonable or ordinary care to be exercised to protect an invitee must be commensurate with the particular circumstances involved, including the age and capacity of the invitee. (Id. § 63 (45)).
* * * * * *
The owner, occupant, or person in charge of property is not an insurer of the safety of an invitee thereon, * * *. (Id. § 63(45)).
* * * * * *
The duty toward an invitee does not extend to looking out for or preventing wrongful acts or disorderly conduct of the invitee, which may result in injury to him, or to prevent a careless person from injuring himself. (Id. § 63(45)).
* * * * * *
[W]here the invitee knows of the danger or is chargeable with knowledge thereof, even a warning is not required, * * *. (Id. § 63(46)).

*270 * * * * * *
The basis of the inviter's liability for injuries sustained by the invitee on the premises rests on the owner's superior knowledge of the danger, and, as a general rule, he is not liable for an injury to an invitee resulting from a danger which was known to the invitee or which was obvious or should have been observed by the invitee in the exercise of reasonable care, or from a condition which was as well known or as obvious to the invitee as to the inviter, or from a danger which the invitee should reasonably have appreciated before exposing himself to it, or which the inviter had no reason to believe would not be discovered by the invitee. It has been held that liability cannot be based on a condition of the premises which is incidental to the business being carried on there and to be expected by an invitee.
There is no duty to warn the invitee of a defect or danger which is known to him or which is as well-known to the invitee as to the owner or occupant, or which is obvious or which should be observed by the invitee in the exercise of ordinary care. (Id. § 63(53)).
See also 38 Am.Jur. Negligence section 97 (1941).
In General Tire & Rubber Company v. Darnell, 221 So.2d 104, 107 (Miss. 1969), this Court said:
Plaintiff was an invitee on the premises of the defendant. The owner or occupier of business premises owes business invitees the duty to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition. The owner of a business is not an insurer of invitees using the premises for business reasons, and there is no liability for injuries caused by conditions which are not dangerous or which are, or should be, known or obvious to the business invitee. The invitee is required to use in the interest of his own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstances. Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473 (Miss. 1967). If we assume that there was some causal connection between the condition of the elevator doors and plaintiff's injuries, there is no liability because the plaintiff actually knew that the elevator doors were hard to start and he knew that if he placed his hand between the doors he would be injured.
`Likewise, in the usual case, there is no obligation to protect the invitee against dangers which are known to him or which are so obvious and apparent to him that he may reasonably be expected to discover them. Against such conditions it may normally be expected that the visitor will protect himself. It is for this reason that it is so frequently held that reasonable care requires nothing more than a warning of the danger. Prosser, Law of Torts, 403, 404 (3rd ed. 1964)'
In Mississippi Power & Light Company v. Nail, 211 So.2d 815, 820 (Miss. 1968) the Court quoted with approval from an opinion of the Supreme Court of Maryland, as follows:
In Le Vonas v. Acme Paper Board Company, 184 Md. 16, 40 A.2d 43 (1944), the Court used this language:
`In accordance with these basic principles, the law does not require that a person, who maintains even so deadly an instrumentality as a high voltage electric wire, shall anticipate at his peril every possible fortuitous circumstance under which some person might make a contact with the wire, resulting in injury or death. * * * Electricity is now used so universally in city and country, in home and in business, for illumination and motive power, and for communication and transportation, that it is a matter of common knowledge that any line carrying electric current is dangerous to a more or less degree. The fact that a wire is charged with electric current is notice of danger, and any person *271 mindful of his safety should treat it with caution. Id. at 21, 40 A.2d at 45.'
In Nail a written warning had been given to an employee of an independent contractor who had no familiarity with electricity. Here, electricity was Sexton's business. 65A C.J.S. Negligence § 203 (1966), states:
Where persons hold themselves out as competent contractors or builders, they may be presumed to have the technical knowledge and skill required in the performance of their undertaking.
In Campbell v. Willard, 204 Miss. 783, 792, 39 So.2d 483, 484 (1949) the Court said:
Sufficient stress is lacking upon principles which the lay mind too often ignores, and which even in judicial opinions are assumed rather than asserted. These are that injury of itself confers no legal right; that danger of itself is not negligence; and that negligence of itself is not liability.
In United Roofing And Siding Company v. Seefeld, 222 So.2d 406 (Miss. 1969), it was held that a plumber had assumed the risk when he injured himself by stepping on a nail in a scrap of lumber at a construction site. The Court pointed out that while Mississippi Code 1942 Annotated section 1456 (1956) had abolished the assumption of risk as between master and servant the doctrine had not been abolished as to an independent contractor. The Court quoted 41 Am.Jur.2d Independent Contractors section 28 (1968) as follows:
As an exception to the general rule requiring the owner or occupier of premises (the contractee) to furnish a safe place of work to an independent contractor and the latter's employees, the owner or occupier is under no duty to protect them against risks arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair. Closely related to this exception is the rule that the owner is not liable for death or injury of an independent contractor or one of his employees resulting from dangers which the contractor, as an expert, has known, or as to which he and his employees "assumed the risk."
In Langford v. Mercurio, 254 Miss. 788, 802, 183 So.2d 150, 156 (1966) this Court said:
In Prosser, Torts § 67 at 459-60 (3d ed. 1964), it is pointed out:
`By entering freely and voluntarily into any relation or situation which presents obvious danger, the plaintiff may be taken to accept it, and to undertake to look out for himself and relieve the defendant of responsibility. * * *
Furthermore, a plaintiff who has been for a substantial length of time in the immediate vicinity of a dangerous situation will be taken to have discovered and to understand the normal, ordinary risks involved in that situation, such as the danger of trains in motion in a railroad yard, or of standarized obstructions near the track. Once the plaintiff fully understands the risk, the fact that he has momentarily forgotten it will not protect him. (Id. at 463.)'
In Prosser, Law of Torts section 55 (2d ed. 1941), it is stated:
[T]he plaintiff cannot be heard to say that he did not comprehend a risk which must have been obvious to him. * * * [W]here it is clear that any person of normal intelligence in his position must have understood the danger, the issue must be decided by the court.
The incontrovertible basic facts of the incident cannot be obscured or gainsaid. Sexton, a professional electrician of long experience, in broad daylight, in his own good time, with his own helper, employing such of his own tools and safety devices (rubber gloves) as he elected to use (and omitting to use others which he had with him), while climbing (a method he selected) a pole strung with wires (several of which he had installed himself), well *272 knowing that such wires were charged with electricity, fully aware that uninsulated copper wires and fittings darkened in the natural processes of weathering, all of the wires and fittings on the pole being plainly visible if he had but looked and the pole being one with which he was familiar from having climbed it on former occasions, brought his unprotected elbow into contact with a copper fitting and received a shock which caused him to let go and fall to the ground and injure himself.
On the whole record, it is clear that the sole proximate cause of Sexton's injury was his own negligence and complete want of care in bringing his unprotected elbow into contact with the kerney. Moreover, under the basic circumstances of the accident which cannot be disputed, Sexton assumed the risk. The request of Ready-Mix that the jury be instructed peremptorily to return a verdict in its favor should have been granted.
Reversed and judgment here for the appellant.
GILLESPIE, P.J., and RODGERS, PATTERSON and ROBERTSON, JJ., concur.