# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 96-CA-00408-COA

LUONG DOMINIQUE VU                                                        APPELLANT

v.

BAC LUU CLAYTON AND MUISE XUAN, D/B/A XUAN HOUNG
RESTAURANT                                                               APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 03/12/96 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RUSSELL GILL |
| ATTORNEYS FOR APPELLEES: | RICHARD W. SLIMAN |
| | WILLIAM MCDONOUGH |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | DIRECTED VERDICT AWARDED TO APPELLEE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 07/20/1999 |
| MOTION FOR REHEARING FILED: | denied 10/26/99 |
| CERTIORARI FILED: | 11/15/99; granted 01/27/2000 |
| MANDATE ISSUED: | |

EN BANC.

DIAZ, J., FOR THE COURT:

¶1. Luong Dominique Vu was injured on September 11, 1993, when he fell through the attic of the commercial building in which he was installing an ancillary air conditioning system. He filed suit against Bac Luu Clayton, owner of the building, and Muise Xuan, owner of the restaurant located therein, in the Circuit Court of Harrison County on October 13, 1994. On March 12, 1996, the circuit court granted Clayton's and Xuan's motion for a directed verdict. Looking at the evidence, as we must, in a light most favorable to Vu, we find that the issues of premises liability raised in this case should have been allowed to proceed to the jury for consideration. We find no error, however, in the circuit court's evidentiary rulings. Therefore, while we affirm the circuit court's rulings in part, we reverse and remand for further proceedings consistent

with this opinion.

## FACTS

¶2. Vu was hired as an independent contractor by Muise Xuan to install an ancillary air conditioning unit in the attic of a building owned by Bac Luu Clayton. To complete the project, it was necessary to move away from the installation site to another location in the attic to tie an electrical cord from the unit's blower into the110-volt power source supplying both the new unit and the primary unit, which had been installed just a few months earlier in March or April of 1993. While Vu was standing on a sheet of plywood laid over the ceiling joists as a walkway, he stepped back to adjust the flashlight he was holding for another workman. He fell through a cased opening measuring approximately four feet square to the floor below, seriously injuring his arm. At trial, both Vu and his co-worker testified that the area was thick with dust and in the dim light of the attic, the cavity of the opening, which was filled with a number of boxes, appeared to be a continuation of the plywood walkway on which Vu had been standing.

¶3. Vu brought suit against both Clayton, the premises owner, and Muise Xuan, who operated the restaurant located in the building.[1] Both defendants denied having ever been in the attic area, which was accessible only through a small trap door. Thus, they asserted that they had no actual knowledge of the conditions existing in the attic. They further argued that there were no facts which would give rise to a finding that they should have known about this condition or otherwise charging them with constructive notice of its existence.

¶4. In addition to the more traditional theory of premises liability law, Vu alternatively sought to base liability on the fact that these defendants previously had another air conditioning unit installed in the attic area without obtaining the necessary building permit. Vu's theory of liability was that, if the defendants had obtained the earlier permit, the building inspector, in inspecting the final installation, would have discovered the hazardous conditions in the attic that led to his injury and required the defendants to correct them.

¶5. A jury trial was held on March 5 and 6, 1996. At the close of Vu's case, Clayton and Xuan moved for a directed verdict. The circuit court granted the motion and dismissed the action by order dated March 12, 1996. Vu's motion for judgment notwithstanding the verdict or alternatively, for a new trial, was denied by the circuit court on April 2, 1996. Aggrieved by these rulings, Vu now appeals to this Court.

## I. WHETHER THE CIRCUIT COURT ERRED IN GRANTING THE DEFENDANTS' MOTION FOR A DIRECTED VERDICT

¶6. The trial court has authority to direct a verdict for the defendants at the close of the plaintiff's case when the court is convinced that, viewing the plaintiff's evidence in the light most favorable to him, no reasonable juror properly instructed in the law could return a verdict in favor of the plaintiff. *Little v. Bell,* 719 So. 2d 757, 760 (¶13) (Miss. 1998). On an appeal, this Court reviews the evidence *de novo*, giving no deference to the trial court's conclusions. *Id.*

### A. Traditional Premises Liability

¶7. Unlike most jurisdictions, Mississippi continues to define the duty a premises owner owes to a person injured on his property according to his classification as a trespasser, licensee or invitee. *Little,* 719 So. 2d at 760(¶14). As an independent contractor on the premises to perform construction or repair, Vu is considered a business invitee. *Jackson Ready-Mix Concrete v. Sexton*, 235 So. 2d 267, 270 (Miss. 1970). In general, Clayton and Xuan owed invitees on the premises the duty to use "ordinary care to have [the] premises in a reasonably safe condition for use in a manner consistent with the purposes of the invitation."*Mississippi Winn-Dixie Supermarkets v. Hughes*, 247 Miss. 575, 581, 156 So. 2d 734, 735 (1963). Further, as the Mississippi Supreme Court explained in *Caruso v. Picayune Pizza Hut, Inc.,* 598 So. 2d 770 (Miss. 1992), "the owner of premises: (1) is not an insurer of the invitee's safety, (2) has only a duty to keep the premises reasonably safe, and (3) when not reasonably safe to warn only where there is hidden danger or peril that is not in plain and open view." *Id.* at 773.

¶8. As to independent contractors, characterized as business invitees, however, the premises owner's duty has been somewhat more ambiguous. He is required to provide "a reasonably safe place to work or to give warning of danger." *Jackson Ready-Mix Concrete*, 235 So. 2d at 270; *Ingalls Shipbuilding Corp. v. McDougald*, 228 So. 2d 365, 367 (Miss. 1969). That duty did not extend to warning an independent contractor of any "open and obvious" dangers or conditions which were in plain view and clearly apparent. *Diamond Int'l Corp. v. May*, 445 So. 2d 832, 835-36 (Miss. 1984); *Jackson Ready-Mix Concrete*, 235 So. 2d at 271-72. Further, Mississippi law long has recognized that a premises owner incurs no liability if an injury suffered by an independent contractor or his employee resulted from "risks arising from or intimately connected with defects arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair." *Jackson Ready-Mix Concrete,* 235 So. 2d at 271(contractor repairing a faulty heating system could not normally recover for an injury sustained when system malfunctioned during the course of repairs). Further, the premises owner's liability is limited by the extent to which he has "devolve[d] upon the contractor the right and fact of control of the premises and the nature and detail of the work . . . ." *Magee v. Transcontinental Gas Pipe Line Corp.*, 551 So. 2d 182, 185 (Miss. 1989).

¶9. In *Tharp v. Bungee*, 641 So. 2d 20 (Miss. 1994), however, the Mississippi Supreme Court abolished the "open and obvious" rule, in a decision apparently applicable to all invitees, requiring property owners to take care of dangerous or unsafe conditions, both latent and patent. There, the court found that the premises owner, who was best situated to eliminate a dangerous condition, was burdened with correcting the situation and could not rely on the invitee's knowledge of the danger in assessing, from the owner's perspective, the foreseeability of injury. *Id.* at 25. As the Fifth Circuit stated, construing *Tharp* in a case where the employee of an independent contractor was injured as a result of the premises owner's allegedly negligent placement of a floor trolley, "*Tharp* reaffirms the duty under Mississippi law to remove or alleviate dangerous conditions that made the premises not reasonably safe. It also extends that duty to apply to all such conditions, latent and patent." *Hill v. International Paper Co.,* 121 F. 3d 168, 173 (5th Cir. 1997). Further, the court noted in *Hill,* "the *Tharp* rule appeared to apply in all premises liability cases, including those involving independent contractors." *Id.* at 174.

¶10. Three years later, in *Jones v. James Reeves Contractors, Inc.,* 701 So. 2d 774 (Miss. 1997), the Mississippi Supreme Court considered the liability of the lessor of the site where the injury occurred, for the death of a workman, Willis Cooley. Cooley and two others were killed when the manhole in which they were working collapsed as the result of subsurface water in the soil, a condition of which the contractors were aware and working to remedy. Although finding that Howard Industries was not the owner of the

construction site where Cooley was killed, in dicta, the court discussed at length how, even had Howard Industries owned the site, it still would not have been liable because under the terms of the construction contract, complete control of the premises and the work being done had been divested to the contractor and the subcontractor for whom Cooley worked. *Jones,* 701 So. 2d at 782-783. Further, in considering the issue of whether the circuit court erred in absolving Howard Industries of liability based on the "open and obvious" defense, the court acknowledged the holding in *Tharpe* and commented that "it is apparent that the words 'open and obvious' or any hint that such a defense might have been the basis for the trial court's decision are strictly a figment of the plaintiffs' attorney's imagination." *Id.* at 783.

¶11. Looking at the facts now before us in the context of the patchwork of Mississippi premises liability law, we cannot say that the circuit court properly precluded the jury from considering Clayton's and Xuan's liability for Vu's injuries. They were not absolved from liability as a matter of law and a jury properly instructed in the law reasonably could have found in Vu's favor. As distinguished from *Magee* and *Jones*, there is no evidence that Vu was given unfettered control of the premises and the work conducted therein. At the very least, the extent to which Clayton and Xuan surrendered control was a matter for the jury to consider. Further, as distinguished from *Jackson Ready-Mix Concrete,* Vu's injuries were not caused by a malfunction in the equipment he was installing. Moreover, regardless of whether the condition of the attic walkway is characterized as open and obvious or latent, whether Clayton and Xuan breached their duty to Vu and other business invitees to make themselves aware of any dangerous conditions and rectify them, as well as to correct the dangerous situation, is a question not for this Court, but for the finder of fact. Accordingly, we find that the circuit court erred in directing the verdict against Vu.

## B. Lack of a Permit for Earlier Work

¶12. While we find that a jury should have been allowed to consider the issue of Clayton's and Xuan's liability for Vu's injuries, we reject his alternative theory that his injuries were caused by the failure to obtain a permit for the installation of the primary air conditioning unit in the attic. He contends that but for the existence of a variety of building code violations which might have been exposed and corrected had the proper permits been obtained, he would not have been injured.

¶13. Bac Luu Clayton was issued a building permit on February 4, 1993, for the purpose of repairing interior walls, ceilings and other interior aspects of the building in which Vu was injured. Vu Construction, Dominique Vu's business, was listed as the contractor. Various other permits for plumbing, electrical and exterior work were issued between February and September of 1993. Evidence introduced at trial showed that neither Clayton nor Colin Gray, who installed the primary air conditioning unit in March or April of 1993, obtained a permit for installation of the system. Further, Vu, by his own admission, had not obtained a permit for the installation of the ancillary air conditioning system, either. Vu, nevertheless, produced evidence that there were certain building code violations in the attic relating to lighting and the existence of walkways to provide access to all equipment located therein. It is highly speculative, however, especially in light of the variety of permits issued to Vu and other workmen for the project, that the procurement of a permit for the installation of the primary air conditioning unit necessarily would have resulted in the placement of a walkway over the cased opening through which Vu fell or in the installation of better lighting in the attic. Evidence in the record indicates that the city's building code related primarily to new construction and that building inspectors had some measure of discretion as to whether, in the repair or renovation of an existing building, the owner was required to bring the building up to code specifications in

all regards. This proposition is supported by the fact that after completing some of the renovations, Clayton was issued a Certificate of Occupancy by the City of Biloxi Building Division, indicating that the building was suitable for its intended use even though, we reasonably may assume, the attic was in the same condition as it was when Vu was injured. To suggest that a city building inspector's approval of the previous air conditioning installation necessarily would have led him to inspect the walkways and lighting in areas of the attic beyond the subject work site requires an exercise in speculation and conjecture that simply cannot form the foundation for a legitimate theory of negligence. *Hertz Corp. v. Goza,* 306 So. 2d 657, 660 (Miss. 1974); *Berry v. Brunt,* 252 Miss. 194, 204, 172 So. 2d 398, 402 (1965). There is no merit, therefore, to the assignment of error.

III. WHETHER THE CIRCUIT COURT ERRED IN ITS RULINGS ON THE ADMISSION AND EXCLUSION OF EVIDENCE

¶14. Vu's remaining assignments of error focus on rulings made by the trial court on various evidentiary matters. The admission of evidence is within the discretion of the trial judge. *Thompson Machine Commerce Corp. v. Wallace*, 687 So. 2d 149, 152 (Miss. 1997). Where, as in the case *sub judice,* there is no abuse of that discretion, we must affirm the rulings of the court below. *Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.,* 716 So. 2d 200, 210 (Miss. 1998).

¶15. Vu first asserts that he should have been allowed to introduce a liability insurance policy for the limited purposes of showing that Bac Luu Clayton was the named insured for the restaurant building located in the building as evidence of her control over the premises and impeaching her testimony that she had no involvement with the restaurant. While Rule 411 of the Mississippi Rules of Evidence prohibits the use of evidence of liability insurance with regard to issues of negligence, it may be introduced to demonstrate proof of agency, ownership or control. However, since it was undisputed that Clayton owned the building, the fact of her control over the premises was not disputed. The circuit court did not abuse its discretion in refusing to admit the insurance policy at issue.

¶16. Vu next contends that evidence of his tax returns for the years 1989 through 1993 should have been excluded as unfair and prejudicial. Because the returns indicate that his income was derived substantially from various rental properties rather than his repair business, he suggests that the evidence did not portray a true picture of his lost earning capacity and would mislead the jury into thinking that he was "a man of substance and wealth." It is the plaintiff's burden to prove the damages he seeks. *Puckett Machinery Co. v. Edwards,* 641 So. 2d 29, 36 (Miss. 1994). "'[W]hile the measure of damages need not be perfect, the most accurate and reliable evidence available should be required.'" *Id.* (quoting *City of New Albany v. Barkley*, 510 So. 2d 805, 807 (Miss. 1987))(tax returns and banking records were available best evidence of lost profits). Vu cannot have his cake and eat it too. He could not hope to recover for lost wages without anticipating that the defense would introduce the best evidence thereof, his tax returns, when he had failed to do so. The circuit court, therefore, cannot be said to have abused its discretion in allowing Vu's tax returns into evidence.

¶17. Vu also argues that the circuit court should not have excluded from evidence a videotape of the attic where he was injured, apparently taken pursuant to an agreed order to inspect the premises. He contends that the entire videotape should have been admitted because the parties stipulated to its admission at the

beginning of the trial. However, the parties stipulated only to admitting that part of the tape which was recorded during the March 1995 premises inspection, which was played during the testimony of Vu's expert witness, Pete Hall. The rest of the tape showed the condition of the attic as it appeared just days before trial and was not representative of its condition at the time of Vu's injury. As Clayton and Xuan argue, its introduction was of no probative value and would serve only to mislead the jury, contrary to Rule 403 of the Mississippi Rules of Evidence. We find no abuse of discretion in the trial court's ruling.

## CONCLUSIONS

¶18. Looking at the evidence in a light most favorable to Vu, as we must when considering a directed verdict, we find that the jury should have been allowed to consider the liability of Clayton and Xuan for Vu's injuries. However, we disagree with Vu's assertion that the jury should also have been allowed to consider whether the failure to obtain a permit for the installation of the primary air conditioning system formed the basis of liability for his injuries. We further find that there was no abuse of discretion in the various evidentiary rulings Vu now appeals. Accordingly, while we affirm the circuit court's decision in part, we reverse and remand for further proceedings consistent with this opinion.

¶19. **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES**.

**KING, P.J., AND BRIDGES, LEE, PAYNE, AND THOMAS, JJ., CONCUR.**

**MCMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY SOUTHWICK, P.J. AND IRVING, J.**

**MOORE, J., NOT PARTICIPATING.**

McMILLIN, C.J., DISSENTING:

¶20. I respectfully dissent. I would affirm the trial judge's decision to grant judgment in favor of the defendants.

¶21. The trial court has authority to direct a verdict for the defendants at the close of the plaintiff's case

when the court is convinced that, viewing the plaintiff's evidence in the light most favorable to his case, no reasonable juror properly instructed on the law could return a verdict in favor of the plaintiff. *Little v. Bell,* 719 So. 2d 757 (¶13) (Miss. 1998). On an appeal from such a ruling, the appellate court reviews the evidence under the same standard, the review being *de novo*, with no deference given to the trial court's conclusions. *Id.*

## A.

### Traditional Premises Liability

¶22. There is no allegation in this suit that either of these defendants did anything affirmatively to contribute to Vu's injury. Rather, Vu's theory of liability is in a realm of tort law that has come to be known generally as premises liability, in which the entity in control of real property may be required to respond in damages for injuries caused by hazardous conditions existing on the premises. *See Wilson v. Allday,* 487 So. 2d 793, 796 (Miss. 1986). As in all tort law, this liability arises out of the law's perception of certain duties owed by the premises owner to those entering on the property. Unlike many other jurisdictions, Mississippi continues to define differently the duties of the premises owner to a person injured on the property depending on the classification that the law assigns to the injured person. Generally, such persons can be broken down into three classifications: (a) trespassers, (b) licensees, and (c) invitees. *Little,* 719 So. 2d at 760 (¶14).

¶23. Vu, retained to install an additional air conditioning unit in the attic area of this building, was a business invitee on the premises, under Mississippi law. As an invitee, Vu was entitled to assume that these defendants would use "ordinary care to have [the] premises in a reasonably safe condition for use in a manner consistent with the purposes of the invitation." *Mississippi Winn-Dixie Supermarkets v. Hughes*, 247 Miss. 575, 581, 156 So. 2d 734, 735 (1963). This duty included the obligation to remove all hazardous conditions of which the defendants had actual or constructive knowledge, or, as a bare minimum, to adequately warn Vu of uncorrected hazardous conditions. *Downs v. Corder,* 377 So. 2d 603, 605 (Miss. 1979).

¶24. However, by virtue of the particular circumstances under which Vu came to be on the property, there is an additional consideration affecting these defendants' liability. Mississippi law, while recognizing that an independent contractor on the premises to perform construction or repair is a business invitee, has recognized certain exceptions to the duties of the premises owner owed to its invitees in general. One of these common-sense exceptions deals with hazardous conditions that are integrally associated with the very purpose for which the contractor is on the premises. If the injury complained of resulted from "risks arising from or intimately connected with defects . . . which the contractor has undertaken to repair . . ." then the premises owner incurs no liability. *Jackson Ready-Mix Concrete v. Sexton,* 235 So. 2d 267, 271 (Miss. 1970). Thus, a heating contractor called to repair a faulty heating system could not normally recover from the premises owner for an injury received from some malfunction of the system occurring during the course of the repair process. Of course, in the case now before us, Vu was not retained to repair or correct hazardous conditions in the flooring of the attic. However, it seems self-evident that an independent contractor going into an unfinished and largely-unused attic area to install an air conditioning unit should reasonably understand that the condition of the attic is a "risk intimately connected" with his purpose for being on the premises. *Id.*

¶25. Closer to the point is the case of *Magee v. Transcontinental Gas Pipe Line Corp.,* 551 So.2d 182, 185 (Miss. 1989). In that case, Transcontinental Gas Pipe Line Corporation (Transco) had contracted with Singley Construction Company to construct several miles of underground pipeline along land under the control of Transco by virtue of its being the grantee of right-of-way easements. Magee, a welder working for Singley, was injured when a ditch in which he was working collapsed. Magee filed suit against Singley and Transco alleging that their negligence proximately caused his injury. The trial court granted Transco's motion for summary judgment, and Magee appealed. In upholding the trial court's award of summary judgment in favor of Transco, the Mississippi Supreme Court held that:

[w]here a party such as Transco contracts with another . . . to perform original construction or repair work . . . and devolves upon the contractor the right and fact of control of the premises and the nature and details of the work, the owner has no liability for injuries experienced by the contractor's workers where those injuries arose out of or were intimately connected with the work.

*Id.* The supreme court went on to say that "[w]hat is critical is whether the project owner maintains any right of control over the performance of that aspect of the work that has given rise to the injury." *Id.* at 186. While in this case, we deal with the question of liability to the contractor himself rather than an employee of the contractor, the principle of law absolving an owner who reasonably surrenders control of the "nature and details" of a project such as the installation of this air conditioning unit would be the same. Certainly, the working conditions in an inaccessible attic area, including any perceived hazards existing in areas clearly not intended for normal traffic, are matters intimately connected with the work of installing an air conditioning unit. There is no evidence that either defendant in this case had any understanding of the details associated with installation of the air conditioning system or had actual knowledge of the conditions existing in this attic area. An owner retaining an air conditioning contractor to install a cooling unit is entitled to assume that, as a part of the expertise the contractor brings to the job, the contractor -- and not the owner -- would assess the proposed area of installation to ensure that it was a suitable location and that the installation could be accomplished in a reasonably safe manner. It is, in the normal case, exactly this level of expertise that the property owner intends for the contractor to bring to the project.

¶26. Seeking to find some disputed issue of material fact, Vu claims that Clayton's testimony concerning the existence of three permanent light bulbs in the attic created a jury issue as to whether she had, in fact, been in the attic so that she might thereby be charged with actual notice of the allegedly hazardous condition. I do not think that this evidence is enough to create a legitimate contested issue of fact on actual knowledge of the condition. Clayton went on to explain that her statement that the lights had been there all the time was based on the proposition that she knew she had not had them installed after Vu's unfortunate accident. Even were this to be a disputed issue of fact, it seems a somewhat unusual proposition that the law would assign to these two defendants a higher responsibility than it would to Vu to observe and appreciate those dangers that might exist in an attic area that, by its very nature, goes largely unused except for periodic entry by persons such as Vu, who hold themselves out to the less-skilled property owner as having particular expertise in the specialized work that is typically performed in such inaccessible areas.

¶27. It also seems a doubtful notion, at best, that a supply of empty boxes placed in the open spaces between ceiling joists in an unfinished attic could constitute the kind of hidden hazard that a property owner

would be required to warn a skilled installation contractor against. Vu's argument suggests that his inability to distinguish these boxes from the plywood sheets laid down in certain other areas to serve as a walkway arose to a large extent because of the lack of adequate lighting in the attic. Certainly it is illogical in the extreme to suggest that inadequate lighting constituted a hidden danger that exposed him to the unreasonable risk of injury. The doctrine of assumption of the risk may, as for the general run of invitees, have diminished in force in Mississippi by virtue of such decisions as *Braswell v. Economy Supply Co.,* 281 So. 2d 669, 677 (Miss. 1973). However, as to those independent contractors on the premises to perform construction or repairs, there is every indication that, as to those matters integrally related to the services being performed, the law would still deny recovery to one who, because he holds himself out as having particular skills and abilities, can be seen as having assumed the risk when he is injured by some defect in the property that, had he been acting with reasonable caution, he would have discovered and avoided. *Jackson Ready-Mix Concrete,* 235 So. 2d at 271.

¶28. There is no evidence that these defendants had actual knowledge that a supply of boxes in the attic had come to be so arranged that, in the absence of an adequate lighting supply, the boxes may have resembled a walkway. I am satisfied that, even viewing the evidence in the light most favorable to Vu, there was no legitimate jury question as to whether there was a duty on the part of these defendants, in anticipation of Vu's work in the attic, to affirmatively conduct an inspection of the attic to search out and correct potential hazards that might injure Vu in the course of his work. Thus, there is no legitimate basis to charge these defendants with constructive notice of this alleged hazardous condition in the attic. Rather, I would conclude that the better reasoning suggests that the defendants were entitled to rely upon Vu, as a part of performing a contract that involved working in such a seldom-used and inaccessible area as an unfinished attic, to assess the condition of the area in which he would be working to determine (a) whether the work could be done with reasonable safety, and (b) if not, what steps would be necessary to bring the working conditions up to a safe level. When Vu, despite clear evidence that this was an unfinished attic, undertook to rely upon his unreliable perception of the conditions in the attic to step onto a space between the ceiling joists because, in the dim light available, he thought that a stack of boxes was a plywood walkway, he did so at his own peril.

**SOUTHWICK, P.J., AND IRVING, J., JOINS THIS SEPARATE WRITTEN OPINION.**

1. Suit was also brought, but later dismissed on a motion by Vu, against Thomas Vu, also doing business as Xuan Houng Restaurant.