# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CT-00408-SCT


*LUONG DOMINIQUE VU*

*v.*

*BAC LUU CLAYTON AND*

*MUISE XUAN d/b/a*

*XUAN HOUNG RESTAURANT*


## ON WRIT OF CERTIORARI


| | |
|---|---|
| DATE OF JUDGMENT: | 03/12/96 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RUSSELL GILL |
| | MELISSA D. BATIA |
| ATTORNEYS FOR APPELLEES: | RICHARD W. SLIMAN |
| | WILLIAM McDONOUGH |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED - 06/22/2000 |
| MOTION FOR REHEARING FILED: | 7/24/2000; denied 9/14/2000 |
| MANDATE ISSUED: | 9/21/2000 |


**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**


¶1. While performing repair work in a restaurant attic, Luong Dominique Vu fell through the ceiling and injured his arm. He sued the building owner and the proprietor of the restaurant which was located in the building. At trial, after Vu rested his case-in-chief, the court directed a verdict for defendants Bac Luu Clayton and Muise Xuan d/b/a Xuan Houng Restaurant. Finding that reasonable jurors could have found for Vu, a divided Court of Appeals reversed and remanded. We granted Clayton and Xuan's petition for writ of certiorari, and we reverse the judgment of the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2. Clayton owned a building which she rented to her "god sister" Xuan, who operated a Vietnamese restaurant on the premises. Vu was hired as an independent contractor by Xuan to install an ancillary air conditioning unit in the unfinished attic. A plywood walkway led the way to the air conditioning unit which was placed on the rafters in the attic. Vu was holding and adjusting a flashlight for a co-worker when he stepped backward off the plywood walkway. He fell through an approximately 4 x 4 foot cased opening to the floor below, seriously injuring his arm. Apparently, at one time, an attic fan had been placed in the opening, but it had since been removed. At trial, both Vu and his co-worker testified that the area was dusty and that, in the dim light of the attic, the cavity of the opening, which was filled with a number of boxes, appeared to be a continuation of the plywood walkway on which Vu had been standing.

¶3. Both Clayton and Xuan denied having ever been in the attic area, which was accessible only through a small trap door. They asserted that they had no knowledge of the conditions existing in the attic. Clayton had purchased the building and rented it to Xuan approximately eight months before the accident. Clayton and Xuan further argued that there were no facts which would give rise to a finding that they should have known about this condition or otherwise charging them with constructive notice of its existence.

¶4. A jury trial was held on March 5 and 6, 1996. At the close of Vu's case-in-chief, Clayton and Xuan moved for a directed verdict. The Circuit Court of Harrison County, Mississippi, granted the motion and dismissed the action by order dated March 12, 1996. The Court of Appeals found that the directed verdict was not proper and affirmed in part and reversed and remanded in part. We granted Clayton and Xuan's petition for writ of certiorari.

## ANALYSIS

¶5. The standard of review in cases where a directed verdict has been granted is as follows:

> This Court conducts a de novo review of motions for directed verdict. . . . If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted. *Pace v. Financial Sec. Life of Mississippi*, 608 So. 2d 1135, 1138 (Miss. 1992) (citation omitted). Additionally, this Court has held that "[a] trial court should submit an issue to the jury only if the evidence creates a question of fact concerning which reasonable jurors could disagree." *Vines v. Windham*, 606 So. 2d 128, 131 (Miss. 1992).

*Little v. Bell*, 719 So. 2d 757, 760 (Miss. 1998).

¶6. In reversing the trial court's decision, the Court of Appeals found:

> Looking at the facts now before us in the context of the patchwork of Mississippi premises liability law, we cannot say that the circuit court properly precluded the jury from considering Clayton's and Xuan's liability for Vu's injuries. They were not absolved from liability as a matter of law and a jury properly instructed in the law reasonably could have found in Vu's favor.

*Vu v. Clayton*, No. 96-CA-00408-COA (Miss. Ct. App. July 20, 1999).

¶7. The parties agree that Vu was a business invitee. As an invitee, Clayton and Xuan owed Vu "the duty to keep the premises reasonably safe and when not reasonably safe to warn only where there is hidden danger

or peril that is not in plain and open view." *Little*, 719 So. 2d at 760 (citing ***Caruso v. Picayune Pizza Hut, Inc.***, 598 So. 2d 770, 773 (Miss.1992)). Of course, the owner or occupant is not an insurer against all injuries. ***Drennan v. The Kroger Co.***, 672 So. 2d 1168, 1170 (Miss. 1996). However,

> [A]n owner or operator of a business still owes a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or warn of dangerous conditions not readily apparent, which owner or occupant knows of, or should know of, in the exercise of reasonable care. ***Jerry Lee's Grocery, Inc. v. Thompson***, 528 So. 2d 293 (Miss. 1988). The invitee is still required to use in the interest of his own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance. ***Tate v. Southern Jitney Jungle Co.***, 650 So. 2d 1347, 1351 (Miss. 1995).

***Fulton v. Robinson Indus., Inc.***, 664 So. 2d 170, 175 (Miss. 1995).

¶8. In Mississippi, a plaintiff's premises liability claim can be based on one of three theories:

> (1) that defendant's own negligence created a dangerous condition which caused plaintiff's injury; (2) that defendant had actual knowledge of a condition which defendant itself did not cause, but defendant failed to adequately warn plaintiff of the danger she faced as an invitee; or (3) that, based upon the passage of time, defendant should have known of the dangerous condition caused by another party if defendant had acted reasonably, i.e., constructive knowledge of the condition should be imputed to defendant. ***Downs v. Choo***, 656 So. 2d 84, 86 (Miss. 1995) (citing ***Munford, Inc. v. Fleming***, 597 So. 2d 1282, 1284 (Miss. 1992)).

*K-Mart Corp. v. Hardy*, 735 So. 2d 975, 980 (Miss. 1999). *See also* ***Waller v. Dixieland Food Stores, Inc***., 492 So. 2d 283 (Miss. 1986) (owner or occupant can only be liable for dangerous conditions which he "knows of or should know of in the exercise of reasonable care").

¶9. There was no proof that Clayton or Xuan had actual or constructive knowledge of the allegedly dangerous condition. They had become landlord and tenant only a few months before the accident. There was no proof either had ventured up a ladder into the small trap door to examine this space, or that either had constructive notice of the hazard from other sources. Indeed, at the time of purchase, a city inspector had issued a certificate of occupancy which indicated the building was safe.

¶10. Vu argues that Clayton and Xuan had constructive knowledge because sufficient time had passed since the dangerous condition had been created. In the eight months Clayton had owned the building, she had hired an air conditioning contractor to install the air conditioning and ductwork in the attic. He apparently abandoned the job or was unavailable to do the work Vu was eventually hired to perform. As noted above, constructive knowledge is generally a function of how long the condition has existed. *Hardy*, 735 So. 2d at 980. In light of the fact that the attic here was highly inaccessible and that neither Clayton nor Xuan had any reason to venture there, it is hard to imagine a scenario under which Clayton or Xuan would have gained constructive knowledge of the allegedly dangerous condition in the attic unless a contractor, whom they had hired to work in the attic, had told them. We find, as a matter of law, that neither Clayton nor Xuan had constructive knowledge of the allegedly dangerous condition in the restaurant's attic.

¶11. In contrast to Clayton or Xuan's absence of knowledge of the conditions in the attic, Vu had been in the attic approximately ten times over the course of two days. He had twenty years of experience in

climbing into attics. In ***Tharp v. Bunge Corp.***, 641 So. 2d 20 (Miss. 1994), this Court eliminated the open and obvious defense in premises liability actions. However, the Court held that "[t]he party in the best position to eliminate a dangerous condition should be burdened with that responsibility." ***Id***. at 25. In ***Lumbley v. Ten Point Co.***, 556 So. 2d 1026 (Miss. 1990), we held that a hunting camp caretaker's wife who fell from a staircase when a railing broke could not recover from the premises owner. The Court stated, "The appellants (plaintiffs) were in a better situation to discover and know of the defective rail than were the appellees (defendants)." ***Id.*** at 1031. Here, Vu was in the better position to determine and eliminate possible dangers. In assessing the respective situations, the contractor with years of experience in performing attic repair work and who had actually been in the attic in question numerous times was certainly in a better position to evaluate hazards and risks than Clayton and Xuan, who had never been in the attic. Because reasonable jurors could not have found that either Clayton or Xuan had knowledge of the allegedly dangerous condition, we find that the trial court correctly directed the verdict in their favor.

¶12. Additionally, in ***Jackson Ready-Mix Concrete v. Sexton***, 235 So. 2d 267 (Miss. 1970), the Court considered a case in which an electrician fell from a utility pole while installing an additional electric line on the property of Jackson Ready-Mix. The electrician accidently allowed his elbow to come into contact with an uninsulated kerney which shocked him and caused him to fall from the pole. The Court found no liability on the part of the premises owner and that the jury should have been instructed peremptorily to return a verdict for Jackson Ready-Mix. The Court noted the rule that "the owner or occupier is under no duty to protect [independent contractors] against risks arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair." ***Id***. at 271.

¶13. In ***[Jones v. James Reeves Contractors, Inc](#)***., 701 So. 2d 774 (Miss. 1997), the Court considered a case in which three construction workers were killed in an excavation cave-in. Finding no liability on the part of the premises owner, the Court held, "The owner/occupier is not an insurer of the invitee's safety, and he is not liable for [conditions] which are not dangerous or which are, or should be known to the business invitee."***Id.*** at 782.

¶14. Clayton and Xuan maintain that ***Jackson Ready-Mix*** and ***[Jones](#)*** apply here and bar recovery by Vu. They argue that remaining on the planking or rafters is intimately connected with any repair work in an attic and that Vu should have known of the allegedly dangerous condition. We agree. Vu was on the premises and in the attic for the sole purpose of repairing the air conditioning system. Clearly, the risk of falling through the ceiling arose from or was intimately connected with that enterprise. And under these circumstances, Vu should have known of the allegedly dangerous condition. Under ***Jackson Ready-Mix*** and ***[Jones](#),*** the trial court correctly directed a verdict for Clayton and Xuan.

## CONCLUSION

¶15. Because Vu failed to show any knowledge, either actual or constructive, on the part of either Clayton or Xuan of the allegedly dangerous condition in the attic and because the risk of falling through the ceiling was intimately connected with repair work in the attic, the trial court correctly directed a verdict in favor of Clayton and Xuan. Accordingly, the judgment of the Court of Appeals is reversed, with the result that the trial court's judgment is reinstated and affirmed.

¶16. **REVERSED.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., SMITH, MILLS AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶17. Luong Dominique Vu ("Vu") was stripped of the opportunity of having his day in court before a jury of his peers. There was enough evidence even through the defendants' testimony to allow a jury to decide this case by a preponderance of the evidence. This Court has held that where a motion for directed verdict is made and granted at the close of the plaintiff's case-in-chief, the trial court should look "solely to the testimony on behalf of the opposing party; if such testimony, along with all reasonable inferences, which could be drawn therefrom, could support a verdict for that party, the case should not be taken from the jury." *Wirtz v. Switzer*, 586 So. 2d 775, 779 (Miss. 1991). On review, this Court must consider the evidence in the same light. *Id.* at 779; *Guerdon Indus., Inc. v. Gentry*, 531 So. 2d 1202, 1205 (Miss. 1988). This standard was gravely overlooked by both the trial court and the majority, leading to a misguided decision. When viewing the evidence presented by the plaintiff alone, there are material facts in dispute and issues of law that would clearly enable a jury to find in Vu's favor. Accordingly, I dissent.

¶18. Vu was injured while installing a second air-conditioner in the attic of the Xuan Houng Restaurant, owned by Bac Luu Clayton and leased to his sister, Muise Xuan. There was only dim lighting in the attic, requiring his assistant to hold a flashlight where they worked. As Vu was walking on a solid floor walkway he fell through a square hole that was covered and hidden by cardboard boxes. As a result of the fall, Vu suffered severe injuries to his arm which required nine (9) screws and two (2) pins in his elbow in addition to a metal plate. Dr. Hawkins's opinion was that Vu sustained a 60% permanent partial impairment to the arm, translating into a 40% disability to the body as a whole.

¶19. Both of the cases heavily relied upon by the majority are easily distinguishable from the case at hand. The first case, *Jackson Ready-Mix Concrete v. Sexton*, 235 So. 2d 267 (Miss. 1970), was decided many years before the assumption of risk doctrine was held to be subsumed into comparative negligence and could not, as a matter of law, create a complete bar to recovery. *Churchill v. Pearl River Basin Development Dist.*, No. 96-CA-01384-SCT, 1999 WL 333433, at *4 (Miss. 1999). The second, *Jones v. James Reeves Contractors, Inc.*, 701 So. 2d 774 (Miss. 1997), actually relies on *Jackson Ready-Mix* for its holding. In fact, the quote detailed in today's majority opinion was taken direct from the *Jackson Ready-Mix* case.

¶20. In *Jackson Ready-Mix*, a professional electrician ("Sexton") fell from a pole while attempting to install an additional electric line. While the Court found no liability on the part of the premises owner, this decision was based on the fact that the sole proximate cause was Sexton's own negligence and that he assumed the risk. Sexton had many years of experience and in broad daylight, with a helper, and employing tools and safety devices of his own choosing, climbed up the utility pole. The pole was strung with several wires that Sexton had previously installed. He was fully aware of the danger of uninsulated copper wires and fittings but was negligent in failing to properly inspect. The Court looked to Sexton's experience as an electrician and the fact that he had climbed that very pole prior to the day of the accident. But more than anything, the Court declared that Sexton had assumed the risk and therefore could not recover. *Jackson Ready-Mix*, 235 So. 2d at 272.

¶21. Reliance by the majority on *Jackson Ready-Mix* is clearly misplaced. In the case at hand, Vu was

not injured while engaged in a task he undertook to perform. He had nothing to do with the installation, maintenance or repair of the walkway, but rather had a right to assume that the walkway conformed with construction building codes as required by the City of Biloxi, which it did not. In contrast, Vu did not suffer any injuries as a result of the actual installation of the air-conditioning unit.

¶22. The appellees and the majority both go to great lengths to argue that the directed verdict was proper. They emphasize that not only did the appellees not owe a duty to warn Vu of any alleged hazardous conditions, but also there was no evidence that either of the appellees had been in the attic prior to the fall and as a result, had no knowledge of the conditions.

¶23. To the contrary, Vu presented evidence through testimony that clearly established an issue for determination by the jury as to constructive knowledge of appellees, particularly Clayton. Clayton testified that she never went into the attic before or after the first air conditioning unit was installed by Colin Gray ("Gray") and never inspected his work. However, in response to a specific question regarding the amount of lighting in the attic, **Clayton said that three lights had been there all along. How did she know?** The extent of Clayton's knowledge of the conditions in the attic was a critical issue and should have been resolved by a jury, not the judge. Further, the jury should have been allowed to resolve the issue of whether there was a reasonably sufficient period of time for the appellees to have discovered the condition in the attic. There was at least a four-month period between the time Gray installed the first air conditioner and Vu's accident.

¶24. An even more compelling reason for a reversal of the trial court's directed verdict, and one not addressed by the majority, is the fact that the trial court blatantly overlooked the appellee's violations of the building code. The trial court held:

> The fact that there may have been a violation of the code perhaps could be submitted to the jury, but as to a causal relationship between that code violation and the incident itself, there would be no showing of a causal relationship between the two.

¶25. It is the role of the jury to determine whether a causal relationship exists. The court invaded the province of the jury in holding there was no relationship between the code violations and the injuries suffered by Vu.

¶26. Vu presented the testimony of Pete Hall, one of only three certified building officials in Mississippi, who testified that there were violations of the building code, particularly poor lighting and failure to provide a continuous flooring in the attic. The appellees and the trial court pointed to a certificate of occupancy that was issued to Vu, claiming the building was in compliance with the building code. However, the condition of the building on April 1, 1993, is not the issue in this case, but rather the issue is the condition of the building on September 11, 1993. The building was never approved, nor inspected, for work to be done in the attic. It is possible that a jury could find that had the attic been up to code, Vu would not have been injured because a continuous walkway and a proper lighting system would have been installed.

¶27. At the very least, the trial court should have allowed this case to continue to the jury. This Court has many times held that there are sound reasons for reserving ruling on such a motion until after the jury has returned a verdict. Instead, the court disregarded the evidence and issued a directed verdict. Vu made a prima facie case based on both simple negligence and premises liability which should have been submitted to the jury. The trial court's directed verdict should be reversed, and this case remanded for a new trial.

Accordingly, I dissent.