# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-IA-00045-SCT

*HENRY T. PEAK, JR.*

*v.*

*MICHAEL JAMES COHEE*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/19/2018 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| TRIAL COURT ATTORNEYS: | GRAFTON ERIC BRAGG |
| | CORY LOUIS RADICIONI |
| | WAYNE DOWDY |
| | DUNBAR DOWDY WATT |
| | WAYNE B. WILLIAMS |
| COURT FROM WHICH APPEALED: | AMITE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GRAFTON ERIC BRAGG |
| | CORY LOUIS RADICIONI |
| ATTORNEY FOR APPELLEE: | WAYNE DOWDY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 04/16/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.    This Court granted an interlocutory appeal to decide if a homeowner was wrongly denied summary judgment in a lawsuit filed by a storm adjuster who fell through the damaged roof he was hired by the homeowner's insurance company to inspect. The adjuster was injured while performing the specific task he was hired to do—identify and distinguish preexisting roof damage from storm damage. While the adjuster recovered workers'

compensation benefits, he also filed suit against the homeowner for failing to make the premises safe and for not warning him about the roof's condition.

¶2.     The homeowner filed two summary judgment motions, arguing the intimately connected doctrine barred the adjuster's suit as a matter of law. After review, we find the trial court erred by denying summary judgment. The homeowner exercised no control over the adjuster. And absent some exercise of control over a contractor, Mississippi law does not impose liability on property owners for injuries suffered by independent contractors arising from or intimately connected to the work they were contracted to perform.[1] We therefore reverse the trial court's denial of summary judgment and render judgment in the homeowner's favor.

**Background Facts and Procedural History**

¶3.     A storm in Liberty, Mississippi, caused damage to the roof of Henry Peak's house. Peak filed a claim with his insurer, Allstate Insurance Company. Allstate contracted with Pilot Catastrophe Services, Inc., to inspect and evaluate the storm damage to Peak's roof. Pilot sent Michael Cohee to Peak's home, as an independent adjuster for Allstate, to inspect and evaluate the roof.

¶4.     According to Cohee—over his lengthy career in construction and thousands of storm-damage adjustment assignments—he developed a procedure for inspecting damaged homes.

---

[1] *Magee v. Transcon. Gas Pipe Line Corp.*, 551 So. 2d 182, 185 (Miss. 1989); *see also Vu v. Clayton*, 765 So. 2d 1253 (Miss. 2000) (finding the intimately connected doctrine applied and summary judgment was appropriate for owner and tenant when a tenant in an owner's building hired a contractor to install an air conditioner in the attic, and the installer fell through the ceiling while working).

His practice was first to obtain information from the insured. Then, he would inspect the home's interior, and, afterwards, its exterior. Cohee always inspected the inside first to "see if there's any damage that would hinder [him] or impair [him] once [he] got on the roof or specific area that [he] may need to target . . . ." Cohee stuck to this procedure when inspecting Peak's home.

¶5.    When Cohee arrived, he spoke with Peak and then evaluated damage to Peak's two-tier roof from inside the home. Cohee identified and photographed water stains on the ceilings and stains on the second-tier roof decking in the attic. He then went outside and, before climbing on the roof, noted, "[y]ou [could] stand on the ground and look at the front porch and see that there's something going on." He saw significant rotting around the front porch and, once on the roof, confirmed rotten decking under the shingles. He next inspected the front slope of the second tier where he confirmed the metal ridge vent at the roof's apex was not installed properly. Cohee believed it had likely been leaking for some time. Cohee typically avoided stepping on damaged areas, like the roof decking around the attic ridge vent. But that day, when he stepped over the ridge vent from the second-tier front slope to the back, he stepped through a decayed or rotten section along the ridge vent and fell through the decking, partially into the attic. Cohee injured his neck, back, right hip, right arm, and rotator cuffs in each shoulder. His injuries were serious and kept him from working for more than a year.[2]

---

[2] Cohee was cleared for light duty work in August 2015. By agreed order, Pilot's workers' compensation insurer filed an intervening complaint seeking reimbursement from any recovery by Cohee. The insurer alleged that for Cohee's injury it paid $72,199.62 in benefits and $61,644.66 for medical services.

3

¶6. Cohee filed suit against Peak, claiming Peak failed to make the premises safe or warn about the roof's condition. In response, Peak moved for summary judgment. Peak argued he was not liable for Cohee's injuries that arose from or were intimately connected to the work Peak's insurance company had hired Cohee to perform—inspecting and evaluating the damaged roof. Peak also pointed to Mississippi Code Section 11-1-66, alternatively arguing he was not liable to Cohee, an independent contractor, who knew or reasonably should have known about the roof damage.[3] The trial judge denied Peak summary judgment, finding material fact issues existed about whether Cohee knew or should have known of the danger and whether that danger was intimately connected to Cohee's work.

¶7. Discovery continued, and Peak deposed Cohee. Cohee admitted in his deposition he was there to identify preexisting damage and to distinguish it from storm damage—to adjust the loss. Cohee had an active catastrophe adjuster's license in Texas, which he needed to perform inspections and adjustments.[4] Cohee had roughly four decades of construction experience and had inspected an estimated 3,000 houses for Pilot. Cohee estimated around 75 percent of homes he investigated for storm damage had some sort of roof damage. And of those with roof damage, 90 percent of the time he climbed on the roof to inspect. Five to 10 percent of those houses had significant rotting like Peak's house. Cohee's deposition testimony about how he performed inspections prompted Peak to file another motion for summary judgment. In it, Peak again raised the intimately connected doctrine. He also

[3] Miss. Code Ann. § 11-1-66 (Rev. 2019).

[4] According to Cohee, he kept a Texas adjuster's license because it was reciprocal with licenses in thirty-two other states.

argued Section 11-1-66 barred Cohee's lawsuit.

¶8.    Again, the trial court denied summary judgment, finding a material fact issue existed over whether Cohee knew or should have known about the roof's condition. The trial judge found Peak's intimately connected doctrine argument compelling. But the judge found he had "plenary authority to deny summary judgment and, notwithstanding the absence of material fact issues," the judge chose "to exercise that authority here." Aggrieved, Peak petitioned for an interlocutory appeal, which this Court granted.

## Discussion

¶9.    On interlocutory appeal, Peak again raises the two proposed bars to Cohee's suit—the intimately connected work doctrine and Mississippi Code Section 11-1-66. We find the first issue is dispositive and need not address Peak's Section 11-1-66 argument.

¶10.    This Court reviews de novo the grant or denial of summary judgment. *Leffler v. Sharp*, 891 So. 2d 152, 156 (Miss. 2004). "[I]f the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). While evidence is viewed in the light most favorable to the nonmoving party, there must be a material fact issue to preclude summary judgment. *Leffler*, 891 So. 2d at 156. "Summary judgment is mandated where the nonmoving party fails to show evidence sufficient to establish the existence of an essential element to his case." *Ala. Great S. R.R. Co. v. Jobes*, 156 So. 3d 871, 879 (Miss. 2015) (internal quotation marks omitted) (quoting *Sligh v. First Nat'l Bank of Holmes Cty.*, 735 So. 2d 963, 965-66

5

(Miss. 1999)).

¶11. While the trial judge held that he was denying summary judgment, "notwithstanding the absence of material fact issues," we need not dwell on Peak's argument that the judge botched the summary-judgment standard. Instead, based on our de novo review, we find the intimately connected work doctrine applied. Thus, Peak was entitled to summary judgment.

¶12. Under the intimately connected doctrine, liability is not generally imposed on an owner who contracts with another to perform work, and the contractor or their employee suffers injuries that "arose out of or were intimately connected with the work." *Magee v. Transcon. Gas Pipe Line Corp.*, 551 So. 2d 182, 185 (Miss. 1989) (citing *Hathorn v. Hailey*, 487 So. 2d 1342, 1344-45 (Miss. 1986)); *see also* *Coho Res., Inc. v. Chapman*, 913 So. 2d 899, 905-06 (Miss. 2005). The lone exception applies to arrangements where "the project owner maintains any right of control over the performance of that aspect of the work that has given rise to the injury." *Id.* at 186 (citing *Fruchter v. Lynch Oil Co.*, 522 So. 2d 195, 199-200 (Miss. 1988)); *see also* *Chapman*, 913 So. 2d at 906.

¶13. Though the doctrine typically arises in construction or repair cases, its application is not limited solely to those contexts. The Court of Appeals has examined the doctrine's application to a variety of contracted work. *See, e.g.*, *Int'l Paper Co. v. Townsend*, 961 So. 2d 741 (Miss. Ct. App. 2007) (lumberyard owner not liable for truck driver's slip and fall while driver's truck was being unloaded); *Ga. Pac. Corp. v. Ratcliff*, 916 So. 2d 546 (Miss. Ct. App. 2005) (lumber plant owner not liable for truck driver's fall while driver covered a load of lumber with a tarp); *Grammar v. Dollar*, 911 So. 2d 619 (Miss. Ct. App. 2005)

(homeowners were not liable for housekeeper's slip and fall on a wet bathroom floor); ***Cashwell v. Fincher***, 914 So. 2d 1250 (Miss. Ct. App. 2005) (doctrine did not apply to TV repair business owner, when owner exercised clear control over a contractor helping to move a television).

¶14.    Cohee does not argue that Peak had any control over his inspection.  Rather, Cohee insists he was an invitee and Peak knew or should have known about the rotted roof and disclosed its condition to him.  He also argues there was no contractual relationship between Peak and Pilot, so the intimately connected doctrine does not apply.  Alternatively, Cohee argues that because he was not there to perform any repairs to Peak's roof, it falls outside the doctrine's scope.

¶15.    After review, we find no merit to Cohee's arguments.  First, an owner "is not an insurer of invitees . . . and there is no liability for injuries caused by conditions which are not dangerous or which are, or should be, known or obvious to the business invitee." ***Jackson Ready-Mix Concrete v. Sexton***, 235 So. 2d 267, 270 (Miss. 1970) (internal quotation marks omitted) (quoting ***Gen. Tire & Rubber Co. v. Darnell***, 221 So. 2d 104, 107 (Miss. 1969)). And here, Cohee admitted noticing rotting areas of the roof, signs of an improperly installed ridge vent, and water damage before ever climbing on the roof.  Second, the doctrine's applicability is not limited to contracted construction or repair work. Nor is contractual privity between owner and contractor required for the doctrine to apply.  In ***Vu v. Clayton***, this Court considered a suit by an independent contractor against a building owner and a tenant operating a restaurant in the owner's building. ***Vu v. Clayton***, 765 So. 2d 1253, 1254

7

(Miss. 2000). The tenant hired the contractor to install an air conditioner in the attic. *Id.* While installing the air conditioner, the contractor fell through the ceiling and seriously injured his arm. *Id.* The contractor sued both the owner and the tenant, and both moved for summary judgment asserting, among other defenses, the intimately connected doctrine. *Id.* The trial court granted both defendants summary judgment. *Id.* On writ of certiorari, this Court found the intimately connected doctrine applied, entitling defendants to judgment as a matter of law. *Id.* at 1256-57.

¶16.    Under *Vu*, the question is not whether the property owner is the contracting party, but instead focuses on the nature of the contracted work and whether the injury arose from or was intimately connected to that work. Here, Cohee's hired task was to inspect and evaluate roof damage to adjust an insurance claim. He testified that he climbed on roofs in ninety percent of his damage inspections. It obviously follows that falling through a damaged roof—like the one here that he had already noticed had significant rotting issues—is an injury intimately connected to his adjustment work.

¶17.    Despite this and "the absence of material fact issues," the trial court denied summary judgment and held "fuller development of the facts would be beneficial to the court." But as Peak correctly points out, further discovery would not suddenly produce a material fact dispute over the doctrine's application. *See Great S. Nat'l Bank v. Minter*, 590 So. 2d 129 (Miss. 1991); *Donald v. Reeves Transp. Co. of Calhoun, Ga.*, 538 So. 2d 1191 (Miss. 1989).

¶18.    Because the intimately connected doctrine applies, Peak was entitled to summary judgment.

## Conclusion

¶19.    Cohee's injuries arose from and were intimately connected to the adjustment work he was hired to perform.  Because Peak bore no control over Cohee, he is not liable for Cohee's injuries.  We therefore reverse the trial court's denial of summary judgment and render judgment in Peak's favor.

¶20.    **REVERSED AND RENDERED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**