# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00076-COA

GARY H. GILLESPIE                                                                                       APPELLANT

v.

ROSE M. LAMEY                                                                                              APPELLEE

DATE OF JUDGMENT:            06/01/2017
TRIAL JUDGE:                         HON. LAWRENCE PAUL BOURGEOIS JR.
COURT FROM WHICH APPEALED:   HARRISON COUNTY CIRCUIT COURT,
                                             SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:      JOE SAM OWEN
ATTORNEYS FOR APPELLEE:      BRETT K. WILLIAMS
                                             WILLIAM ROBERTS NORMAN
NATURE OF THE CASE:           CIVIL - PERSONAL INJURY
DISPOSITION:                       AFFIRMED - 04/26/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Rose Lamey hired Gary Gillespie, an experienced construction worker, to cover a

broken skylight with a piece of plywood. The skylight was in the metal roof of a storage

building on Lamey's property. While Gillespie was completing that task, the roof at the edge

of the skylight buckled, and he fell through and sustained serious injuries. Gillespie sued

Lamey, alleging, inter alia, that she failed to warn him of a dangerous condition. Following

discovery, the circuit court granted summary judgment in favor of Lamey, holding there was

no evidence that she failed to warn Gillespie of any dangerous condition. The court also held

that Gillespie's claim failed because Lamey had no duty to warn him of risks "intimately

connected" to the task he was hired to do.  For the reasons discussed below, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     On June 27, 2011, Lamey hired Adam Walsh to do some work on the roof of a storage building near her home.  While on the roof, Walsh fell through a skylight and was injured.

¶3.     Later that day, Lamey's son Ben called Gillespie and asked him if he could "take a look at the skylight."  Gillespie had worked as a construction worker and metal stud framer, and he had also worked for Ben's company doing environmental cleanup work after the BP oil spill.  Ben wanted Gillespie to put a piece of plywood over the broken skylight and apply a sealant as a temporary measure to prevent water from leaking into the building.  Lamey planned to hire a contractor at a later date to install a new skylight.  Gillespie went to Lamey's property, visually inspected the roof and skylight from a ladder, and agreed to return the next day to do the work.

¶4.     Ben gave Gillespie a one-page typewritten document and "told [Gillespie he] had to sign it before [he] did any work."  The document stated that Gillespie would be "solely responsible for/or if any bodily injuries should occur" during his work and that he was "working at [his own] risk."  Gillespie signed the document, and an unidentified third party witnessed it.  Gillespie testified that he thought the document meant that "if [he] did any kind of bad work or something, [he] would be liable."

¶5.     The next day, June 28, 2011, Gillespie arrived at Lamey's property to begin work.  Lamey or Ben provided the plywood, sealant, and a ladder, and Ben walked with Gillespie to the storage building.  Gillespie brought all the other tools he needed for the job.  Gillespie

2

climbed onto the roof and knelt down in front of the broken skylight to measure the opening. Gillespie testified, "I was measuring the length of the opening and I was kneeled down right on the side of it, and the metal buckled under my knees." Gillespie testified that the skylight itself did not buckle; rather, the metal roof adjacent to the skylight buckled. When the roof buckled, Gillespie fell through the roof to the floor below. He sustained serious injuries and was taken to Gulfport Memorial Hospital by ambulance.

¶6. Gillespie subsequently filed suit against Lamey in circuit court, alleging that she failed to provide him with a safe place to work and failed to warn him about a dangerous condition on the roof. Following discovery, Lamey filed a motion for summary judgment. She argued that there was no evidence that she had failed to warn Gillespie of any dangerous condition and that she had no duty to warn Gillespie of risks "intimately connected" to the work he had been hired to do. Lamey also argued that Gillespie's claim was barred by the release. In response, Gillespie argued that Lamey failed to "warn[] him that the metal roof had a propensity to buckle." He also argued that the "intimately connected" doctrine did not apply because he was not an "expert" and because he did not exercise "control over his worksite." Finally, Gillespie argued that the release was unenforceable under Mississippi law.

¶7. The circuit court granted summary judgment in favor of Lamey, holding both that there was no evidence that she failed to warn Gillespie of any dangerous condition and that she had no duty to warn Gillespie of any risks "intimately connected" to the work he had been hired to do. Although the circuit court granted Lamey's motion for summary judgment,

3

the court also held that the purported release was invalid and unenforceable.[1] Gillespie filed a motion for reconsideration pursuant to Mississippi Rule of Civil Procedure 59(e), which the circuit court eventually denied, and a notice of appeal.

¶8.     On appeal, Gillespie argues that the circuit court erred by (1) holding that there was no evidence that Lamey failed to warn Gillespie of a dangerous condition; (2) misapplying the "intimately connected" doctrine; (3) finding that Gillespie knew that Adam Walsh had fallen through the roof, which was a disputed issue of fact; (4) relying on a hospital report showing that Gillespie had a high blood-alcohol concentration; and (5) denying his motion for reconsideration.  For the reasons discussed below, we find no reversible error and affirm.

**ANALYSIS**

¶9.     We review an order granting summary judgment de novo. *Stuckey v. The Provident Bank*, 912 So. 2d 859, 864 (¶8) (Miss. 2005).  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  M.R.C.P. 56(c).  "The focal point of our standard for summary judgment is on *material* facts."  *Simmons v. Thompson Mach. of Miss. Inc.*, 631 So. 2d 798, 801 (Miss. 1994) (emphasis added).  A material fact is "*one that matters in an outcome determinative sense*."  *Id.* (quoting *Shaw v. Burchfield*, 481 So. 2d 247, 252 (Miss. 1985)).  Indeed, "the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding

---

[1] On appeal, Lamey does not challenge the circuit court's ruling that the release was unenforceable.  Therefore, we do not address that issue.

4

the material issues of fact." *Id.* (emphasis omitted) (quoting *Shaw*, 481 So. 2d at 252).

¶10.	We view the evidence in the light most favorable to the nonmoving party. *Buckley v. Singing River Hosp.*, 146 So. 3d 365, 369 (¶9) (Miss. Ct. App. 2013). However, the non-moving "party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e).

> **I.	Gillespie presented no evidence that Lamey failed to warn him of any dangerous condition of which she had actual or constructive knowledge.**

¶11.	Gillespie argues that Lamey failed to warn him "about the condition of the metal roof" or about "latent defects in her roof." Gillespie also argues that Lamey failed to warn him about "Adam Walsh's fall" through the skylight. However, regardless of how his claim is framed, Gillespie failed to provide evidence sufficient to survive summary judgment under Mississippi premises liability law.

¶12.	In a premises liability case, we must first determine whether the plaintiff was an invitee, a licensee, or a trespasser. *Hoffman v. Planters Gin Co.*, 358 So. 2d 1008, 1011 (Miss. 1978). In the present case, the parties agree that Gillespie was an invitee. *See Double Quick Inc. v. Moore*, 73 So. 3d 1162, 1166 (¶12) (Miss. 2011) ("An invitee is a person who enters the premises of another in response to an express or implied invitation of the owner or occupant for their mutual advantage." (quotation marks omitted)).

¶13.	Under Mississippi law, a landowner's general duty to an invitee is "to use reasonable care to keep [her] premises in a reasonably safe condition." *Coho Res. Inc. v. McCarthy*, 829

5

So. 2d 1, 10 (¶20) (Miss. 2002). However, "the owner is not an insurer of the invitee's safety." *Id.* "A landowner [also] owes an invitee a duty . . . to warn the invitee of any dangerous conditions on the premises that are not readily apparent." *Griffin v. Grenada Youth League*, 230 So. 3d 1083, 1088 (¶20) (Miss. Ct. App. 2017). However, "[u]nless the dangerous condition was created by the landowner's own negligence, the plaintiff must prove that the landowner had actual or constructive knowledge of the condition." *Id.*

¶14.    In the present case, Gillespie's claim fails because there is no evidence in the record that Lamey failed to warn him of any dangerous condition of which she had actual or constructive knowledge. To begin with, there is no evidence that Lamey knew or should have known that the metal roof of the storage building had a propensity to buckle or fail. There is no evidence that Lamey had actual knowledge of the alleged defect, and she was under no duty to inspect her roof prior to hiring Gillespie to work on it. *See Wilbanks v. Hickman*, 198 So. 3d 393, 398-99 (¶14) (Miss. Ct. App. 2016) (holding that a homeowner was under no duty to inspect her crawlspace prior to a contractor's work there).

¶15.    Gillespie's argument that Lamey should have warned him about "Adam Walsh's fall"[2] also misses the mark. "Adam Walsh's fall" was an event, not a dangerous condition. Moreover, Walsh fell through the skylight, not because the metal roof buckled. And regardless of whether Gillespie knew about Walsh's fall, Gillespie was well aware that the skylight was broken and would not support his weight. Indeed, Gillespie testified that he

---

[2] As discussed below, there is a dispute of fact as to whether Lamey told Gillespie about Walsh's fall. Lamey says she did, while Gillespie says she did not. In any event, that dispute is not "material" for purposes of summary judgment.

6

could look at the skylight and see that it "was damaged enough for someone to fall through." More important, Gillespie was adamant that he did not step on the skylight and that the skylight did not buckle. Gillespie testified that he fell because the metal roof buckled. Walsh's fall through the skylight did not give Lamey actual or constructive notice of any potential defect or dangerous condition in the metal roof itself. Accordingly, Lamey cannot be held liable for failing to warn Gillespie of such a defect or condition, and the circuit court correctly ruled that Lamey was entitled to judgment as a matter of law.

**II.      Gillespie's claim fails because the allegedly dangerous condition was "intimately connected" to the work he was hired to do.**

¶16.    We also conclude that the circuit court properly granted summary judgment in favor of Lamey on the alternative ground that the allegedly dangerous condition was "intimately connected" to the work Lamey was hired to do. "Under the intimately connected doctrine, liability is not generally imposed on an owner who contracts with another to perform work, and the contractor or their employee suffers injuries that arose out of or were intimately connected with the work." *Peak v. Cohee*, 294 So. 3d 604, 607 (¶12) (Miss. 2020) (quotation marks omitted); *accord, e.g.*, *Grammar v. Dollar,* 911 So. 2d 619, 622-23 (¶8) (Miss. Ct. App. 2005) ("[W]hen a danger exists, which is inherent to the work the independent contractor is employed to perform, or which arises from or is intimately connected with the work to be performed, the employer's duty to protect the contractor is absolved."). "The lone exception" to the intimately connected doctrine arises when "the project owner maintains any right of control over the performance of that aspect of the work that has given rise to the injury." *Peak*, 294 So. 3d at 607 (¶12) (quoting *Magee v. Transcon. Gas Pipe Line Corp.*,

7

551 So. 2d 182, 186 (Miss. 1989)).

¶17. For example, in *Vu v. Clayton*, 765 So. 2d 1253 (Miss. 2000), the Supreme Court applied the intimately connected doctrine in a case in which the plaintiff was injured when he fell through the ceiling and injured his arm while installing a new air conditioning unit in the attic of a building. *Id.* at 1254 (¶¶1-2). The plaintiff sued the owner and lessee of the building, but after the plaintiff rested his case-in-chief, the trial court granted a directed verdict in favor of the defendants. *Id.* On appeal, the Supreme Court affirmed, reasoning that the contractor "was on the premises and in the attic for the sole purpose of repairing the air conditioning system," and "the risk of falling through the ceiling arose from or was intimately connected with that enterprise." *Id.* at 1256 (¶14).

¶18. This Court applied the intimately connected doctrine in *Grammar*, a case in which a housekeeper sued the homeowners who employed her after she fell and injured herself on a wet bathroom floor. *See Grammar*, 911 So. 2d at 621-23 (¶¶1, 8, 11). The circuit court granted summary judgment in favor of the homeowners, and the plaintiff appealed. *Id.* at 621 (¶¶2-3). On appeal, this Court affirmed, holding, inter alia, that the intimately connected doctrine barred the plaintiff's claim. *Id.* at 623 (¶11). We reasoned that "because the alleged water was intimately connected with the work for which [the plaintiff] was hired, the duty of the Dollars to warn her was excused or released[.]" *Id.*

¶19. More recently, the Supreme Court applied the intimately connected doctrine in *Peak*, a case in which an insurance adjuster fell through a damaged residential roof he had been hired to inspect. *Peak*, 294 So. 3d at 605 (¶1). The adjuster sued the homeowner, but on

interlocutory appeal, the Supreme Court held that the intimately connected doctrine barred the adjuster's claim. *Id.* at (¶2). The Court explained that the doctrine "focuses on the nature of the contracted work and whether the injury arose from or was intimately connected to that work." *Id.* at 608 (¶16). The Court held that an injury sustained when "falling through a damaged roof" was "an injury intimately connected to [the plaintiff's] adjustment work." *Id.* Accordingly, the court held that the intimately connected doctrine applied and that the homeowner was entitled to summary judgment. *Id.* at (¶18).

¶20. Similarly, in the present case the circuit court correctly held that Gillespie's fall through the metal roof was "intimately connected" to the work he had been hired to do. Indeed, the part of the roof that buckled was literally connected to the skylight Gillespie had been hired to cover and seal, and Gillespie was in the process of measuring the skylight when he fell. Gillespie was on the roof "for the sole purpose of" covering and sealing the damaged skylight, and "the risk of falling through the [roof] arose from or was intimately connected with that enterprise." *Vu*, 765 So. 2d at 1256 (¶14). Accordingly, the intimately connected doctrine applies and bars Gillespie's claim against Lamey.

¶21. Gillespie argues that the "lone exception" to the intimately connected doctrine applies because Lamey retained "control" over his work. *Peak*, 294 So. 3d at 607 (¶12). Specifically, Gillespie argues that this exception applies because (1) Lamey provided him with plywood, sealant, and a ladder, (2) Ben was present and observed Gillespie while he worked, and (3) Lamey or Ben told him what Lamey wanted done—i.e., she wanted the skylight covered with plywood and sealed. Gillespie further argues the fact that he was a

9

"common laborer" rather than a "skilled expert" is evidence that he lacked control over the work. However, this argument is without merit.

¶22. The "lone exception" to the intimately connected doctrine applies only when the landowner "maintains any right of control over the performance of *that aspect of the work that has given rise to the injury*." *Peak*, 294 So. 3d at 607 (¶12) (emphasis added) (quoting *Magee*, 551 So. 2d at 186). An example of the exception's application is found in *Nelson v. Sanderson Farms Inc.*, 969 So. 2d 45, 50-51 (¶¶8-11) (Miss. Ct. App. 2006). In that case, an independent contractor had been hired to repair an underground pipe leading to a waste-water aeration basin at Sanderson Farms' processing facility in McComb. *Id.* at 47 (¶2). Nelson, an employee of the independent contractor, was injured when, during a break, he "placed his hand on top of the basin wall," and a rotating wheel on the basin wall "rolled over his fingers." *Id.* at 49 (¶5). Nelson believed that the rotating wheel had been turned off while they worked, and he alleged that Sanderson Farms negligently failed to warn him that it had been restarted. *Id.* at 49, 51 (¶¶5, 12). On appeal, this Court held that there was a genuine issue of material fact regarding the exception because there was conflicting evidence as to whether Sanderson Farms retained control over the basin and its rotating wheel. *Id.* at 50-51 (¶¶9-10). Thus, in *Nelson*, there was evidence that the defendant retained "control over the performance of *that aspect of the work that has given rise to the injury*." *Id.* at 50 (¶9) (emphasis added) (quoting *Magee*, 551 So. 2d at 186).

¶23. In contrast to *Nelson*, there is no evidence in this case that Lamey retained any control over any aspect of the work that gave rise to Gillespie's injury. Gillespie was not injured

10

because of any defect in the plywood, sealant, or ladder that Lamey provided. Nor did Lamey retain "control" over the work just because she or Ben told Gillespie what they wanted done or watched Gillespie work. *See Galvan v. Miss. Power Co.*, No. 1:10-CV-159-KS-MTP, 2012 WL 1898889, at *9 (S.D. Miss. May 22, 2012) ("[A]n owner does not exercise de facto control over the contractor's work . . . by 'supervising' the work or recommending how to perform the work . . . ."); *McLaurin v. Noble Drilling (U.S.) Inc.*, No. 1:05-CV-463-LG-RHW, 2009 WL 367401, at *5 (S.D. Miss. Feb. 10, 2009) ("The mere fact that [the owner] could observe, inspect and make recommendations does not establish that it had substantial de facto control over [the work]."), *aff'd*, 358 F. App'x 553 (5th Cir. 2009). In short, there is nothing in the record to show that Lamey exercised any actual control over Gillespie's work beyond providing him with materials and a ladder, which had nothing to do with the injuries Gillespie sustained. Therefore, the exception to the intimately connected doctrine does not apply, and Lamey was entitled to summary judgment based on the general rule that a property owner is not liable for "injuries that arose out of or were intimately connected with the work" of an independent contractor. *Peak*, 294 So. 3d at 607 (¶12).

### III. Gillespie's remaining issues do not require reversal.

¶24. As noted above, Gillespie also argues that the circuit court erred by finding that he knew that Adam Walsh had fallen through the roof, by relying on a hospital report showing that Gillespie had a high blood-alcohol concentration, and by denying his motion for reconsideration. None of these issues requires reversal.

¶25. In its order granting summary judgment, the circuit court stated, "Lamey informed

11

Gillespie that a man named Adam Walsh had previously fallen through a skylight on the subject roof." The court also stated, "Gillespie knew that Adam Walsh had previously fallen through one of the skylights on the subject roof." The circuit court's statements were consistent with Lamey's testimony in her deposition that she had told Gillespie about Walsh's fall. However, Gillespie denied that Lamey told him about Walsh's fall. Therefore, the circuit court erred to the extent that it treated Lamey's testimony on this point as an undisputed fact. Nonetheless, the error does not require reversal because the fact is not "material" "in an outcome determinative sense." *Simmons*, 631 So. 2d at 801 (emphasis omitted) (quoting *Shaw*, 481 So. 2d at 252). For the reasons explained above, Lamey was entitled to summary judgment regardless of whether Gillespie knew about Walsh's fall.

¶26. Gillespie also argues that the circuit court erred by discussing his possible intoxication in its order granting summary judgment. The circuit court stated that "Memorial Hospital Gulfport Medical Records indicate that on the morning of June 28, 2011 at 10:30 a.m. Gillespie had a blood alcohol level of 1.89."[3] The circuit court also stated, "The fact that Gillespie was apparently intoxicated, and that may have impeded his ability to protect himself from the potentially dangerous conditions, should not place a further burden on Lamey." Despite what is shown in his hospital records, Gillespie testified in his deposition that he had not consumed any alcohol on the evening of June 27, 2011, or the morning of June 28, 2011. And on appeal, he argues that the circuit court erred by finding that he "was apparently intoxicated" and suggesting a causal relationship between his intoxication and injuries.

---

[3] A hospital record attached to Lamey's motion for summary judgment shows a blood-alcohol concentration of 189.4 mg/dL, which translates to 0.1894 percent.

12

¶27. The circuit court's discussion of Gillespie's possible intoxication was not reversible error. To begin with, the court did not grant summary judgment because Gillespie was intoxicated but only reasoned that his intoxication would not impose a heightened duty on Lamey. More important, whether Gillespie was intoxicated is not a material issue of fact. For the reasons explained above, Lamey was entitled to summary judgment regardless of whether Gillespie was intoxicated. It is important to remember that when we review an order granting summary judgment, "[w]e review the record de novo without deference to the circuit court's reasoning or conclusions. Accordingly, this Court's decision on appeal does not turn on or require approval or disapproval of the precise reasoning that the circuit court gave for its ruling." *Stroud v. Progressive Gulf Ins. Co.*, 239 So. 3d 516, 526 (¶31) (Miss. Ct. App. 2017). Rather, our task is simply to decide de novo whether there is any "genuine issue as to any material" fact and whether "the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). Here, the undisputed facts of record show that Lamey was entitled to judgment as a matter of law regardless of whether Gillespie was intoxicated.

¶28. In his final issue on appeal, Gillespie argues that the circuit court erred by denying his motion for reconsideration pursuant to Mississippi Rule of Civil Procedure 59(e). However, this argument simply incorporates and rehashes issues already addressed above. Accordingly, it is also without merit.

## CONCLUSION

¶29. Gillespie produced no evidence to show that Lamey had actual or constructive knowledge of a defect in the metal roof, and the injuries that Gillespie sustained were

13

"intimately connected" to the work he was hired to do.  Therefore, Lamey was entitled to judgment as a matter of law, and the circuit court properly granted summary judgment.

¶30.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.  SMITH, J., NOT PARTICIPATING.**