WILSON, J.,
for the Court:
¶ 1. Gregory Wilbanks, a licensed residential builder, was injured seriously when he touched an electrified dryer vent duet while working in the crawlspace under Katherine Hickman’s home. Wilbanks filed a'complaint against Hickman, alleging that she was negligent because the dryer vent was an unreasonably dangerous condition of which she had actual of constructive knowledge. After the parties engaged in discovery, the Alcorn County Circuit Court granted Hickman’s motion for summary judgment and dismissed all claims against her,' Wilbanks appeals. We agree with the circuit court that there' is no genuine issue of material ■ fact as' to Wil-banks’s claims against Hickman. Therefore, we affirm,
FACTS AND PROCEDURAL HISTORY
¶ 2. Hickman bought a home in Corinth in 2010. Prior to moving in, she spent months remodeling. She hired Leebo Wil-hite, a licensed electrician, to install an electrical outlet for her dryer. Wilhite testified 'that' he installed a fuse box and ran wire for the outlet, but did not install the outlet itself. Wilhite intended to return to install the outlet once the laundry room was dry walled; however, Hickman never called him to finish the job.[1] Wilhite also replaced a fuse box and rewired a bathroom fan at Hickman’s home.[2]
¶3.- Hickman also hired Wilbanks, a family friend, to do some repair work and odd jobs at her home. Wilbanks is a licensed contractor. Over a period of several months,' Wilbanks installed a dishwasher, a garbage disposal, and crown molding in Hickman’s kitchen. 'Wilbanks also testified that he had been under Hickman’s home five or six times, and on one occasion he spent approximately an hour and a half in the crawlspace under the home rerouting pipes because her sink was not draining properly.
¶4. Hickman testified that'her friend; Scotty Kilgo, moved her washer and dryer into her home and plugged them in sometime before Wilbanks was injured. Kilgo *396 told Hickman’s insurance company[3] that he cut a hole in Hickman’s floor for the dryer vent duct, and ran the duct into the crawlspace underneath her home. Kilgo also stated that he plugged the dryer into an electrical outlet, which he said someone else had already installed. Kilgo stated that he handled the dryer vent duct without incident after he had plugged in the dryer and turned on the circuit breaker. Hickman used the dryer on a few occasions prior to Wilbanks’s injury, and she even mentioned to Wilbanks that she did not think that it was working properly because it was leaving her clothes damp. Wilbanks told her that someone else would have to fix it because he did not know anything about dryers.
¶ 5. In September 2011, Hickman called Wilbanks and asked if he. could install coaxial cable for television at her home. The cable company wanted to drill holes in Hickman’s hardwood floors to install her cable boxes. Hickman asked Wilbanks to install the cable boxes in the wall so as not to damage her floors. Wilbanks spoke to the cable company to find out what he needed to do to install her cable, and they suggested that he should route the cable under the house. As noted above, Wil-banks had been under Hickman’s house several times and had spent about an hour and a half in the crawlspace rerouting drain pipes. Hickman, in contrast, had never ventured into the crawlspace.
¶6. Hickman was at home when Wil-banks arrived to install the cable, but she left soon thereafter. Before leaving, Hickman showed Wilbanks where she wanted each box installed, but she did not give him any other instructions about how to run the cable.. After Hickman left, Wilbanks was injured seriously when he touched the dryer vent duct in the crawlspace beneath the home. He was transported to the hospital by ambulance and suffered electrical bums and other injuries.
¶ 7. Wilbanks subsequently filed a complaint asserting, claims for negligence against both Hickman and Wilhite. Wil-banks alleged he was a business invitee at Hickman’s home and, therefore, Hickman owed him a duty to “exercise reasonable care to ascertain the actual condition of her premises and after having discovered it, either to make it reasonably safe by repair or to give, warning of the actual condition and the risk involved thereon.” Wilbanks claimed that Hickman breached her duty by failing to warn him of the dangerous electrical condition under her home.
¶ 8. Hickman subsequently moved for summary judgment. She argued that Wil-banks failed to present any evidence that she breached any duty toward him and that his knowledge-of the conditions in the crawlspace was “equal, if not superior,” to her own. Wilbanks filed a response, and after hearing oral argument, the circuit court granted Hickman’s motion. In its order granting summary judgment, the circuit court concluded that there was no evidence that Hickman had actual or constructive knowledge of the dangerous condition. Accordingly, the circuit court dismissed all claims against Hickman with prejudice. The circuit court subsequently directed entry of a final judgment on. Wil-banks’s claims against Hickman.[4] See M.R.C.P. 54(b). Wilbanks appeals. ■ On *397 appeal, Wilbanks argues that the court erred by granting Hickman’s motion for summary judgment because genuine issues of material fact remained for trial.
STANDARD OF REVIEW
¶ 9. We review a decision granting summary judgment de novo. Frazier v. McDonald’s Rests. of Miss., Inc., 102 So.3d 341, 343 (¶ 7) (Miss.Ct.App.2012) (citing Pigg v. Express Hotel Partners, 991 So.2d 1197, 1199 (¶ 4) (Miss.2008)). Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). “The evidence is viewed in the light most favorable to the party opposing the motion.” Davis v. Hoss, 869 So.2d 397, 401 (¶ 10) (Miss.2004). However,' “[t]he non-moving party may not’rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there are genuine issues for trial.” Pigg, 991 So.2d at 1199 (¶ 4) (quoting Massey v. Tingle, 867 So.2d 235, 238 (¶ 6) (Miss.2004)). “Numerous, immaterial facts may be controverted, but only those that ‘affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.’ ” Summers ex rel. Dawson v. St. Andrew’s Episcopal Sch., 759 So.2d 1203, 1208 (¶ 12) (Miss.2000) (quoting Sherrod v. U.S. Fid. & Guar. Co., 518 So.2d 640, 642 (Miss.1987)). “Summary judgment is improper only where sufficient evidence exists for a reasonable jury to find for the plaintiff.” Prewitt v. Vance, 16 So.3d 37, 40 (¶ 10) (Miss.Ct.App.2009) (quoting Strantz ex rel. Minga v. Pinion, 652 So.2d 738, 741 (Miss.1995)).
DISCUSSION
¶ 10. To prevail on a negligence claim, Wilbanks must show that Hickman owed him a duty, that she breached that duty, that the breach caused him injury, and that he incurred damages. See Kendrick v. Quin, 49 So.3d 645, 648 (¶9) (Miss.Ct.App.2010) (citing Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 376-77 (Miss.1997)). Thus, to defeat summary judgment, Wilbanks must show there is a genuine issue of material fact as to each of these four elements. Frazier, 102 So.3d at 343 (¶ 8).
 ¶ 11. In a premises liability case, the nature of the property owner’s “duty is contingent on the status of the injured person,” i.e., whether he was an invitee, licensee, or trespasser on the property at the time, of the injury. Albert v. Scott’s Truck Plaza, Inc., 978 So.2d 1264, 1267 (¶ 7) (Miss.2008). “The determination of which status a particular plaintiff holds can be a jury question, but where the facts are not in dispute the classification becomes a question of law.” Id. (quoting Clark v. Moore Mem’l United Methodist Church, 538 So.2d 760, 763 (Miss.1989)).
¶ 12. In this case, there is no dispute that Wilbanks was an independent contractor and a business invitee to Hickman’s home when he was injured. Therefore, Hickman had a general duty to provide him with “a reasonably safe place to work or give warning of danger.” Nelson v. Sanderson Farms, Inc., 969 So.2d 45, 50 (¶ 8) (Miss.Ct.App.2006) (quoting Ratcliff v. Ga. Pac. Corp., 916 So.2d 546, 549 (¶ 10) (Miss.Ct.App.2005)). She also had a “duty to conduct reasonable inspections to discover dangerous conditions existing on the premises.” Pigg, 991 So.2d at 1200 (¶ 5) (quoting Gaines v. K-Mart Corp., 860 So.2d 1214, 1216 (¶ 5) (Miss.2003)). One exception to these general rules is that a homeowner cannot be held liable for injuries to an independent contract that “re- *398 suit [ ] from dangers of which the contractor knew or reasonably should have known.” Miss.Code Ann. § 11-1-66 (Rev. 2014).[5] In addition, to' establish liability based on an undisclosed dangerous condition, Wilbanks must show that Hickman had actual or constructive knowledge of the dangerous condition, or she created the dangerous condition. See Jacox v. Circus Circus Miss., Inc., 908 So.2d 181, 184-85 (¶ 7) (Miss.Ct.App.2005). “Constructive knowledge is established by proof that the dangerous condition existed for such a length of time that, in the exercise of reasonable care, the proprietor should have known of that condition.” Id. at 185 (¶8). '
¶ 13. In this case, the primary point of contention is whether either Wilbanks or Hickman reasonably should . have known of the dangerous condition — the electrified dryer vent duct. Wilbanks argues that Hickman had constructive knowledge of the dangerous condition and that a reasonable inspection of the premises would have revealed the condition. Hickman denies this. She also argues that Wilbanks had the same or superior knowledge about the conditions under her home and electricity in general and also knew (because she told him) that her dryer was not drying clothes properly. From this, she argues that she cannot be held liable because Wilbanks reasonably should have known of the dangerous condition. See Miss.Code Ann. § 11-1-66. Alternatively, she maintains that if the facts' known to Wilbanks were not sufficient to establish, constructiye knowledge, then it necessarily follows that she cannot be charged with constructive knowledge either. In reply, Wilbanks argues that Hickman’s comparison of the parties’ knowledge is neither apt nor dis-positive because Hickman had a duty to make a reasonable inspection of her premises, whereas he, being an invitee, was entitled to expect reasonable warnings about any dangerous conditions that he might encounter on the premises.
¶ 14. Having reviewed the summary judgment record, we agree with Wil-banks that section 11-1-66, which limits a property owner’s liability to an independent contractor, does not apply because there is no evidence that would support a finding that Wilbanks reasonably should have known of the dangerous condition. However, we also conclude that there is no genuine issue of material fact with respect to Hickman’s constructive knowledge. Wilbanks argues that Hickman knew that her dryer was not working properly, that another appliance (the bathroom fan) had been wired improperly, and that Kilgo, who brought in and hooked up the dryer, had incorrectly installed drain lines in the house on a prior occasion. Wilbanks argues that, based on this knowledge, Hick,man had a duty to make a reasonable inspection to attempt to determine why her dryer was not working properly and that such an inspection would have revealed the danger. But our Supreme Court has held that “a premises owner’s liability for failure to conduct reasonable inspections is limited” as follows:
There is no liability .. for harm resulting from conditions from which no unreasonable risk was to be anticipated, or *399 those 'which the occupier did not know and could not have discovered with reasonable care. The mere existence of a defect or danger is not enough to establish liability, unless -it is shown to be of such a character or of such a duration that the jury may reasonably conclude that due care would have discovered'it.
Jones v. Imperial Palace of Miss., LLC, 147 So.3d 318, 321-22 (¶ 14) (Miss.2014) (quoting Moore v. Winn-Dixie Stores, Inc., 252 Miss. 693, 699, 173 So.2d 603, 605 (1965)). Nothing about the nature of the danger involved in this case suggests that, in the exercise of “due” or “reasonable” care, Hickman should have discovered the electrified dryer vent duct in the crawlspace under her home. Neither damp clothes nor totally unrelated issues with drain lines or a bathroom fan impose a duty on a homeowner to search a crawlspace for potential electrical dangers.
¶ 15. On this issue, Vu v. Clayton, 765 So.2d 1253 (Miss.2000), is analogous and on point. The defendants in that case, the owner of a restaurant and the building’s landlord, hired a contractor to install an air conditioning unit in an unfinished attic. Id. at 1254 (¶ 2). The contractor was injured when he stepped off of a plywood walkway in the attic and fell through a “cased opening” to the floor below. Id. The contractor fell because the opening “appeared to be a continuation of the ... walkway.” Id. The defendants were unaware of the opening and had never been in the attic, which was accessible through only a small trap door and a ladder. Id. at 1254,1255-56 (¶¶ 2-4, 9-10). The contractor alleged that the defendants had a duty to warn him of the dangerous condition, but on appeal the Supreme Court held, that the circuit court, properly granted the defendants’ motion- for a directed verdict:
In light of the fact that the attic here was highly inaccessible and that neither [defendant] had any reason to venture there, it is hard to imagine a scenario under which [they] would have gained constructive knowledge of the allegedly dangerous condition in,the-attic unless [a different] contractor, whom they had hired to work in the attic, had told them-. We find, as a matter of law, that neither ... had constructive knowledge of the allegedly dangerous condition in the restaurant’s attic.
Id. at 1255-56 (¶ 10).
¶ 16. Wilbanks attempts to distinguish Vu, arguing that the decision in that case turned' on the contractor’s experience working in attics-and his familiarity with the hazards of such work. Wilbanks argues that the electrical hazard he encountered was not a danger inherent in the installation of coaxial cable, and Hickman seems to have conceded, at least for purposes of this appeal,- that there is a factual dispute on this issue. :See supra n. 5. However, Vu is not distinguishable on this basis. In Vu, the Supreme Court held that “as a matter of law” neither defendant “had 'constructive knowledge of the allegedly dangerous condition.” Id. at 1256 (¶ 10). The Supreme Court reached this conclusion apart from its discussion of the contractor’s knowledge and experience. See id. (¶¶ 11-14). We read the opinion as setting forth alternative grounds for the Supreme Court’s decision, either of which was a sufficient basis for the trial court’s ruling. See id. at ■ 1256-57 (¶ 15). Furthermore, on the issue of the constructive knowledge of the defendants, Vu is not distinguishable in any material respect. As the defendants in Vu had not inspected their building’s attic and had no reason or duty to do so, Hickman had not ventured into the crawlspace under her home and had no reason or duty to do so.
¶ 17i Wilbanks also argues, in the alternative, that even if'Hickman did not have constructive knowledge of the dangerous condition, her motion for summary *400 judgment should have been denied because someone acting under her authority created the condition. See, e.g., Elston v. Circus Circus Miss., Inc., 908 So.2d 771, 773 (¶ 9) (Miss.Ct.App.2005) (“No proof of the owner’s knowledge of the condition is necessary where the condition is created by his negligence or the negligence of someone under his- authority.”).[6] However, there is no evidence in the record from which a reasonable jury could so find. After Wilbanks was injured, Hickman hired Wade Butler, an electrician, to check the dryer. Hickman testified that Butler told her “[t]hat the plug was wired backwards or wrong or whatever,” but the record contains no affidavit or testimony from Butler or any other evidence to connect the alleged improper wiring to the electrified dryer vent duct. In addition, as noted above, Wilhite testified that he did not finish installing the outlet, and Wilbanks accepts his testimony as true in this.appeal. Kilgo told Hickman’s insurance company that the outlet was already finished when he brought the dryer into the house and that he only plugged it in and cut a hole in the floor for the vent duct. Hickman testified that she did not ask Kilgo to do any electrical work for her and that she did not know who installed the outlet if not Wilhite. ■
¶ 18. Thus, while certainly there is evidence that a dangerous condition existed, there is no evidence from which a reasonable jury could find what or who caused it, much less that it was created by someone acting at Hickman’s direction. Therefore, in order to prevail on his premises liability claim, Wilbanks would have been required to prove at trial that Hickman had constructive knowledge of the dangerous condition. For the reasons discussed above, there is no genuine dispute of material fact on this issue. Accordingly, we affirm the circuit court’s entry of summary judgment in favor of Hickman.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF ALCORN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, . P JJ., ISHEE, CARLTON AND FAIR, JJ., CONCUR. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. BARNES AND GREENLEE, JJ., NOT PARTICIPATING.

. Wilhite believed that Hickman never called him to finish installing the electrical outlet because, according to Wilhite, she still owed him $300 for his previous work.

,. Hickman testified that Wilhite installed the fan, where.as Wilhite testified that he rewired it because Hickman’s father had installed it incorrectly.

. At the hearing on Hickman's motion for summary judgment, Wilbanks offered as exhibits transcripts of recorded statements that Kilgo, Hickman, and Wilbanks made to Hickman’s insurer. A similar statement from Wil-hite is also in the record. Hickman did not object, and both parties cite to the statements . on appeal.

. The circuit court’s ruling did not resolve Wilbanks's claims against Wilhite.

. Proof that a dangerous condition is attributable to the defendant or its agents or employees is not a distinct theory of liability but simply an alternative way to establish the defendant’s knowledge of the dangerous condition and concomitant duty to warn. See, e.g., Scheerer v. Hardee's Food Sys., Inc., 92 F.3d 702, 709 (8th Cir.1996) (“A possessor ■ will be' deemed to have had actual notice if it is affirmatively shown that an agent or employee of the possessor created the dangerous condition.”); Hairston v. Long Island R.R., No. 00 Civ. 7208(JCF), 2003 WL 21254196, at *5 (S.D.N.Y. May 30, 2003) ("[I]t is a well-settled principle of tort law that when a defendant itself has.created the potential hazard, it has actual notice of the foreseeable dangers associated with it.”).