# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00338-COA

**DAVID RHODES AND DONNA RHODES**                    **APPELLANTS**

**v.**

**RL STRATTON PROPERTIES LLC**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/25/2022 |
| TRIAL JUDGE: | HON. JAMES McCLURE III |
| COURT FROM WHICH APPEALED: | TATE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN THOMAS LAMAR III |
| | TAYLOR ALLISON HECK |
| ATTORNEY FOR APPELLEE: | MARC ALLAN SORIN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 05/23/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.    RL Stratton Properties LLC (RL Stratton) hired David Rhodes, an experienced roofer, to fix water leaks in the ceiling of a building it owned. While inspecting the roof for the source of the water leaks, Rhodes entered the attic area of the building and fell through a framed opening in the attic floor that was hidden from view. Rhodes sustained serious injuries. Rhodes and his wife Donna sued RL Stratton, alleging that it failed to warn him of a dangerous condition. Following discovery, the circuit court granted summary judgment in RL Stratton's favor, holding that the Rhodeses' claim failed because RL Stratton had no duty to warn Rhodes of risks "intimately connected" to the job he was hired to do. For the reasons discussed below, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     Lee Stratton inherited a commercial real estate building in Senatobia, Mississippi, in September 2018.  Lee subsequently conveyed the property to RL Stratton.  Lee is the sole member of RL Stratton.  Lee visited the property in June 2019.  He observed missing ceiling tiles and "wires hanging down" from the ceiling.  He also observed several leaks in the ceiling.  Lee did not get on the roof or go in the attic at any time.

¶3.     In June 2019 (immediately after visiting the property), RL Stratton hired a contractor to repair the ceiling tiles and Rhodes to repair the water leaks.  Rhodes is a licensed contractor and an experienced roofer.  He had worked on the roof of the building before.  According to a June 19, 2019 invoice, Rhodes performed "roof repair" on the building and billed RL Stratton for the work.  RL Stratton paid the invoice.  The roof continued to leak, so Lee again contacted Rhodes.  Rhodes returned to the property a second time but did not fix the leaking problem.

¶4.     On January 13, 2020, Rhodes returned for a third time to fix water leaks.  Rhodes was in the attic of the building searching for the source of the water leaks when he fell through a framed opening in the attic floor, sustaining serious injuries.  The attic was dark, but Rhodes was wearing a headlamp.  The framed opening appeared to have been left after a ceiling fan or a similar object had been removed, leaving just the opening that was missing joists and a deck.  The opening was enclosed inside a dormer suspended above the attic, so it could not be seen from above.  It was also hidden from below by a dropped ceiling

2

suspended below the attic floor.

¶5.     Rhodes and his wife filed a complaint in Tate County Circuit Court against RL Stratton, alleging that it failed to warn Rhodes of the dangerous condition existing in the attic.[1] Following discovery, RL Stratton filed a motion for summary judgment. It asserted that (1) Rhodes had no evidence of a specific act or omission by RL Stratton that caused his fall; (2) Rhodes had no evidence prior to the fall that RL Stratton had any knowledge of the existence of the framed opening; and (3) RL Stratton was not responsible for Rhodes's injuries because his injuries resulted from actions that were "intimately connected" to the work he was doing as a professional roofer.

¶6.     In response, Rhodes asserted that (1) there was a genuine issue of material fact whether RL Stratton had constructive knowledge of the dangerous condition; and (2) the "intimately connected" doctrine did not apply because the act of him looking inside the dormer for water leaks was not a risk "arising from or intimately connected with defects of the premises" that he had "undertaken to repair." *Grammar v. Dollar*, 911 So. 2d 619, 622 (¶8) (Miss. Ct. App. 2005). Rhodes included the expert report of Robert E. Luke, a licensed architect, as an exhibit to his response. Among other opinions, Luke opined that "[t]he theory presented that Mr. Rhodes's work was intimately involved with the missing joists and

---

[1] Rhodes's wife, Donna, also asserted a derivative claim for loss of consortium. "Mississippi law dictates that if the underlying personal injury claim is disposed of, the loss of consortium claim cannot be maintained on its own." *J & J Timber Co. v. Broome*, 932 So. 2d 1, 6 (¶19) (Miss. 2006).

deck as the roofing contractor [is] not valid. Mr. Rhodes was contracted to perform preventative maintenance and help resolve minor water leaks from the roof."

¶7. After a hearing, the circuit court granted summary judgment in RL Stratton's favor and dismissed the Rhodeses' claims, with prejudice. The circuit court found that the failure-to-warn claim was barred by the intimately connected doctrine, as addressed by the Mississippi Supreme Court in *Peak v. Cohee*, 294 So. 3d 604 (Miss. 2020), and *Vu v. Clayton*, 765 So. 2d 1253 (Miss. 2000). Rhodes filed a motion for reconsideration that the circuit court denied after a hearing.

¶8. The Rhodeses appeal, asserting that the trial court erred in granting summary judgment in RL Stratton's favor because (1) genuine issues of material fact remain regarding RL Stratton's liability, and (2) RL Stratton is not "absolved" of liability under the intimately connected doctrine in this case.

## STANDARD OF REVIEW

¶9. We review de novo an order granting summary judgment. *Peak*, 294 So. 3d at 607 (¶10). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "While evidence is viewed in the light most favorable to the nonmoving party, there must be a material fact issue to preclude summary judgment." *Peak*, 294 So. 3d at 607 (¶10). "Summary judgment is mandated where the

4

nonmoving party fails to show evidence sufficient to establish the existence of an essential element to his case." *Id.* (quoting *Ala. Great S. R.R. Co. v. Jobes*, 156 So. 3d 871, 879 (¶21) (Miss. 2015)).

## DISCUSSION

### I. Failure to Warn of Alleged Dangerous Condition of which RL Stratton had Actual or Constructive Knowledge

¶10. Rhodes asserts that RL Stratton failed to warn him of a dangerous condition on its property—the hidden framed opening in the building's attic. Rhodes acknowledges that RL Stratton did not have actual knowledge of this condition. Rhodes asserts, however, that a genuine issue of material fact exists whether RL Stratton had constructive knowledge of the condition, and thus the circuit erred in granting summary judgment in RL Stratton's favor. For the reasons addressed below, we find that the undisputed material facts in this case show that summary judgment is appropriate as a matter of law. We therefore affirm the trial court's order granting summary judgment in RL Stratton's favor.

¶11. In general, the first issue the Court must address in a premises liability case is whether the plaintiff was an invitee, licensee, or trespasser. *Leffler v. Sharp*, 891 So. 2d 152, 153 (¶10) (Miss. 2004). Here, the parties agree that Rhodes was an invitee. The premises owner owes an invitee "the duty to keep the premises reasonably safe and when not reasonably safe to warn only where there is hidden danger or peril that is not in plain and open view." *Vu*, 765 So. 2d at 1255 (¶7). Although an "owner or occupant is not an insurer against all injuries," the "owner . . . still owes a duty to an invitee to exercise reasonable or ordinary care

5

to keep the premises in a reasonably safe condition or warn of dangerous conditions not readily apparent, which owner or occupant knows of, or should know of, in the exercise of reasonable care." *Id.*

¶12.    This duty includes "a duty to conduct reasonable inspections to discover dangerous conditions existing on the premises." *Wilbanks v. Hickman*, 198 So. 3d 393, 397 (¶12) (Miss. Ct. App. 2016) (internal quotation mark omitted).  "But our Supreme Court has held that 'a premises owner's liability for failure to conduct reasonable inspections is limited' as follows: 'There is no liability . . . for harm resulting from [risks] . . . the occupier did not know and could not have discovered with reasonable care.'"  *Id.* at 398-99 (¶14) (quoting *Jones v. Imperial Palace of Miss. LLC*, 147 So. 3d 318, 321-22 (¶14) (Miss. 2014)).

¶13.    Additionally, "unless the dangerous condition was created by the landowner's own negligence, the plaintiff must prove that the landowner had actual or constructive knowledge of the condition."  *Gillespie v. Lamey*, 338 So. 3d 653, 657 (¶13) (Miss. Ct. App. 2022).

¶14.    Rhodes asserts that there was sufficient evidence before the trial court to overcome summary judgment that (1) RL Stratton did not fulfill its duty to conduct reasonable inspections of the property, and (2) the dangerous condition in the attic floor had existed for a sufficient amount of time to impute constructive knowledge to RL Stratton.  Rhodes argues that Lee (the sole member of RL Stratton) inherited the building in September 2018 and had the building nearly a year and a half before the accident occurred.  In that time, neither Lee nor RL Stratton (after Lee conveyed the building to it) had the building inspected.  Rhodes

6

points out that Lee visited the building at least three times. On the first visit, Lee observed that the ceiling was "falling in" and leaking. On another visit, Lee observed a "big dormer thing" in the middle of the roof and wondered what it was. Rhodes's architectural expert also opined that RL Stratton had violated several provisions of the 2018 International Property Maintenance Code (IPMC) by allowing the unsafe condition (the framed opening) to continue to exist.

¶15. RL Stratton argues that whether it had constructive notice of a dangerous condition is immaterial because Rhodes was injured while trying to locate the very water leak he was hired to repair. Thus, according to RL Stratton, the intimately connected doctrine applies to the undisputed material facts of this case, and therefore the Rhodeses' lawsuit was properly dismissed in its entirety.

¶16. As discussed below, we agree with RL Stratton. However, we also find that Rhodes's claim fails because he has not presented any evidence that RL Stratton had constructive knowledge of the framed opening in the building's attic. The supreme court's decision in *Vu*, 765 So. 2d at 1255-56 (¶¶9-11), and this Court's decision in *Wilbanks*, 198 So. 3d at 398-99 (¶¶14-15), support our determination.

¶17. In *Vu*, Clayton owned a building that she rented to Xuan, who operated a restaurant located in the building. *Id.* at 1254 (¶2). Xuan hired a contractor (Vu) "to install an ancillary air conditioning unit in the [building's] unfinished attic. A plywood walkway led the way to the air conditioning unit which was placed on the rafters in the attic." *Id.* Vu stepped off

7

the plywood walkway and fell through a "cased opening" to the floor below, injuring his arm. *Id.* Vu sued Xuan and Clayton, seeking recovery for his injuries. *Id.* at (¶1).

¶18.    Clayton had bought the building and rented it to Xuan about eight months before the accident. *Id.* at (¶3). Neither defendant had been in the attic area, which was accessible only through a small trap door, and both defendants denied having any knowledge of the conditions in the attic. *Id.*

¶19.    The case went to trial. *Id.* at (¶4). After Vu rested his case-in-chief, the circuit court entered a directed verdict for the defendants, which the supreme court affirmed on appeal. *Id.* The supreme court found:

> There was no proof that Clayton or Xuan had actual or constructive knowledge of the allegedly dangerous condition. They had become landlord and tenant only a few months before the accident. There was no proof either had ventured up a ladder into the small trap door to examine this space, or that either had constructive notice of the hazard from other sources. Indeed, at the time of purchase, a city inspector had issued a certificate of occupancy which indicated the building was safe.

*Id.* at 1255 (¶9).

¶20.    Vu asserted that the defendants had constructive knowledge of the dangerous condition because "sufficient time had passed since the dangerous condition had been created." *Id.* at 1255 (¶10). The supreme court recognized that "constructive knowledge is generally a function of how long the condition has existed," *id.*, but reasoned that timing was not dispositive under the circumstances, as follows:

> In light of the fact that the attic here was highly inaccessible and that neither [defendant] had any reason to venture there, it is hard to imagine a scenario

8

under which [the defendants] would have gained constructive knowledge of the allegedly dangerous condition in the attic unless [another] contractor, whom they had hired to work in the attic, had told them. We find, as a matter of law, that neither [defendant] had constructive knowledge of the allegedly dangerous condition in the restaurant's attic.

*Id.* at 1255-56 (¶10).

¶21. The supreme court also rejected Vu's failure-to-warn claim based upon the principle that "[t]he party in the best position to eliminate a dangerous condition should be burdened with that responsibility." *Id.* at 1256 (¶11) (quoting *Tharp v. Bunge Corp.*, 641 So. 2d 20, 25 (Miss. 1994)). On this point, the supreme court found that "[i]n contrast to Clayton or Xuan's absence of knowledge of the conditions in the attic, Vu had been in the attic approximately ten times over the course of two days. He had twenty years of experience in climbing into attics." *Id.* The supreme court reasoned:

> Here, Vu was in the better position to determine and eliminate possible dangers. In assessing the respective situations, the contractor with years of experience in performing attic repair work and who had actually been in the attic in question numerous times was certainly in a better position to evaluate hazards and risks than Clayton and Xuan, who had never been in the attic. Because reasonable jurors could not have found that either Clayton or Xuan had knowledge of the allegedly dangerous condition, we find that the trial court correctly directed the verdict in their favor.

*Id.*

¶22. In *Wilbanks*, 198 So. 3d at 399 (¶¶15-16), this Court relied on *Vu* in finding that a homeowner was under no duty to inspect a crawlspace in her home prior to a contractor doing work in that area. The homeowner, Hickman, hired Wilbanks, a licensed contractor, to do several repair jobs at her home, including a job that involved re-routing pipes located

9

in the crawlspace under Hickman's home. *Id.* at 395 (¶3). Subsequently, Hickman hired Wilbanks to install cable boxes in her home, a job that again involved Wilbanks working in the crawlspace. *Id.* at 396 (¶5). This time, Wilbanks was seriously injured when he touched an electrified dryer vent in the crawlspace. *Id.* at (¶6).

¶23. Wilbanks sued Hickman, claiming she was under a duty to warn him of the dangerous electrical condition under her home. *Id.* at (¶7). Hickman moved for summary judgment. *Id.* at (¶8). The circuit court granted summary judgment in Hickman's favor, concluding "that there was no evidence that Hickman had actual or constructive knowledge of the dangerous condition." *Id.*

¶24. This Court affirmed, holding that Hickman was under no duty to inspect the crawlspace prior to Wilbanks's work in that area. *Id.* at 399 (¶16). Finding *Vu* "on point," this Court reasoned that "[a]s the defendants in *Vu* had not inspected their building's attic and had no reason or duty to do so, Hickman had not ventured into the crawlspace under her home and had no reason or duty to do so." *Id.*; *see Gillespie*, 338 So. 3d at 658 (¶14) (holding that a property owner "was under no duty to inspect her roof prior to hiring [a contractor] to work on it").

¶25. As in *Vu* and *Wilbanks*, Lee had not been in the building's attic, and he "had [no] reason to venture there." *Vu*, 765 So. 2d at 1255-56 (¶10); *see Wilbanks*, 198 So. 3d at 399 (¶16). Indeed, as Lee confirmed in his deposition, he was not aware of any opening or doorway to an attic that was viewable from the building's interior. Nor was the dangerous

condition (the framed opening) observable from the ground; it was covered by a dropped ceiling. Although Lee noticed the dormer on the roof, there was nothing that indicated any dangerous condition within that dormer. As for timing, immediately after Lee's first visit to the property in June 2019, RL Stratton hired a contractor to make repairs to the ceiling and hired Rhodes to locate and fix the water leaks. We find that under these circumstances, RL Stratton had no reason to inspect the attic and roof area "or duty to do so" prior to Rhodes's accident. Accordingly, we find that RL Stratton had no constructive knowledge of the framed opening in the building's attic as a matter of law.

¶26.    Further, in contrast to Lee's "absence of knowledge of the conditions in the attic," *Vu*, 765 So. 2d at 1256 (¶11), Rhodes was an experienced roofer, having "been in roofing his entire life" and "worked on many commercial buildings and varying types of roof structures during his career." Rhodes had worked on the roof of the building at issue both before and after RL Stratton acquired it when he worked on locating and trying to fix the water leaks two times before his accident happened. In short, Rhodes, a roofing contractor with years of roofing experience who had been on the building's roof before "was certainly in a better position to evaluate hazards and risks than [Lee], who had never been in the attic." *Id.* at 1256 (¶11).[2] For both of these reasons, we find that Rhodes's failure-to-warn claim fails as

---

[2] Recently, the supreme court recognized that the "underlying policy" of the intimately connected doctrine (that we discuss in Part II) likewise "places the burden of responsibility on the party in the best position to eliminate or avoid the dangerous condition." *White v. Targa Downstream LLC,* 358 So. 3d 627, 634 (¶18) (Miss. 2023).

11

a matter of law.

## II. Dangerous Condition "Intimately Connected" with the Work Rhodes was Hired to Do

¶27. We also find that even if Rhodes had presented a genuine issue of material fact on the failure-to-warn claim, the circuit court properly granted summary judgment in RL Stratton's favor because the allegedly dangerous condition in the building's attic was "intimately connected" to the work Rhodes was hired to do. "Generally, a premises owner has a duty to provide an independent contractor . . . with a 'reasonably safe place to work or give warning of danger.'" *Nelson v. Sanderson Farms Inc.*, 969 So. 2d 45, 50 (¶8) (Miss. Ct. App. 2006) (quoting *Ratcliff v. Ga. P. Corp.*, 916 So. 2d 546, 549 (¶10) (Miss. Ct. App. 2005)). "Under the intimately connected doctrine, however, this duty is relieved when a premises owner 'contracts with another to perform work, and the contractor or their employee suffers injuries that [arise] out of or [are] intimately connected with the work.'" *White*, 358 So. 3d at 632 (¶12) (internal quotation mark omitted) (quoting *Peak*, 294 So. 3d at 607 (¶12)); *accord Vu*, 765 So. 2d at 1256 (¶12) (recognizing that an "'owner . . . is under no duty to protect independent contractors against risks arising from or intimately connected with defects of the premises . . . the contractor has undertaken to repair'" (quoting *Jackson Ready-Mix Concrete v. Sexton*, 235 So. 2d 267, 271 (Miss.1970))); *Gillespie*, 338 So. 3d at 658 (¶16). The "lone exception" to this doctrine "applies to arrangements where 'the project owner maintains any right of control over the performance of that aspect of the work that has given rise to the injury.'" *Peak*, 294 So. 3d at 607 (¶12) (quoting *Magee v. Transcon. Gas Pipe Line Corp.*,

12

551 So. 2d 182, 186 (Miss. 1989)).

¶28.    Rhodes does not assert that this "lone exception" applies here.  He admitted in his deposition that RL Stratton did not tell Rhodes what kind of tools or supplies he could use to fix the leaking roof, nor did RL Stratton in any way direct how his repair work would be performed.  Rhodes asserts, however, that his injuries resulted from a dangerous condition that had nothing to do with a water leak, and thus the intimately connected doctrine does not apply.  He argues that he "was not hired to inspect or repair the structural deficiencies of the attic floor or the ceiling joists directly underneath, and therefore the structural deficiency in the attic floor that caused his fall was in no way related to the water leaks on the roof he was hired to fix."  Rhodes's expert architect opined, "The theory presented that Mr. Rhodes's work was intimately involved with the missing joists and deck as the roofing contractor [is] not valid.  Mr. Rhodes was contracted to perform preventative maintenance and help resolve minor water leaks from the roof."  Rhodes asserts that "[a]t the very least, the issues of 'arising from' and 'intimately connected with' are fact questions for the jury, making summary judgment improper."

¶29.    On the other hand, RL Stratton asserts that the intimately connected doctrine bars the Rhodeses' lawsuit based upon the undisputed, material facts in the record.  Namely, Rhodes acknowledged in his deposition that he fell while looking for the leak he was hired to repair, as follows:

    Q:    I want to make sure that the reason that you were looking in that
          opening and searching inside this four-sided dormer was because you

13

> thought there was—the source of the leak was in there that you were there to repair?
>
> A: I was looking to see if water may have been coming in somewhere.

Similarly, in his discovery response describing his accident, Rhodes stated:

> [I] was trying to locate a water leak. The roof of the building is relatively flat, but there is a [four]-sided dormer located toward the center of the roof that covers an attic area of the building. While exploring for the leak, [I] crawled through a window opening on the side of the dormer . . . to try to locate the water leak. [I] continued into the attic area, and as [I] went to brace [my]self[,] [I] fell through a framed opening where ceiling joists or other support should have been.

¶30. Based upon Rhodes's own descriptions of the accident, we agree with RL Stratton and the circuit court's conclusion that the intimately connected doctrine bars the Rhodeses' lawsuit in this case. We turn now to a discussion of the caselaw that supports this conclusion.

¶31. In *Vu*, discussed above, the supreme court also found that the intimately connected doctrine barred Vu's lawsuit. *Vu*, 765 So. 2d at 1256-57 (¶¶12-15). To briefly review, Vu was hired by the defendants to install an ancillary air conditioning unit in the building's unfinished attic. *Id.* at 1254 (¶2). He was injured when he stepped off a plywood walkway leading to the air conditioning unit, falling through a "cased opening" to the floor below. *Id.* "Apparently, at one time, an attic fan had been placed in the opening, but it had since been removed." *Id.* Both Vu and his co-worker testified at trial that the area was "dusty" and in the "dim light of the walkway" the cavity "appeared to be a continuation of the plywood walkway." *Id.*

14

¶32.	The supreme court found that the trial court properly directed a verdict in the defendants' favor "because the risk of falling through the ceiling was intimately connected with repair work in the attic." *Id.* at 1257 (¶15). The supreme court reasoned, "Vu was on the premises and in the attic for the sole purpose of repairing the air conditioning system. Clearly, the risk of falling through the ceiling arose from or was intimately connected with that enterprise." *Id.* at 1256 (¶14).

¶33.	The supreme court again applied the intimately connected doctrine in *Peak*, 294 So. 3d at 608 (¶¶14-18). There, an insurance adjuster (Cohee) filed a personal injury complaint against the homeowner after Cohee fell through the homeowner's damaged roof that he was hired to inspect. *Id.* at 605 (¶1). Cohee argued that the homeowner "should have known about the rotted roof and disclosed its condition to him." *Id.* at 608 (¶14). The homeowner moved for summary judgment based upon the intimately connected doctrine, and the circuit court denied the motion.

¶34.	On interlocutory appeal, the supreme court held that the intimately connected doctrine barred the adjuster's claim. *Id.* at 608 (¶18). In doing so, the supreme court explained that "[u]nder *Vu*, the question . . . focuses on the nature of the contracted work and whether the injury arose from or was intimately connected to that work." *Id.* at (¶16). The supreme court observed, "Here, Cohee's hired task was to inspect and evaluate roof damage to adjust an insurance claim. He testified that he climbed on roofs in ninety percent of his damage inspections. It obviously follows that falling through a damaged roof . . . is an injury

15

intimately connected to his adjustment work." *Id.*; *see Gillespie*, 338 So. 3d at 659 (¶20) (A construction worker's personal injury lawsuit was barred by the intimately connected doctrine where the worker was hired to cover and seal a skylight in a metal roof; as he was doing so, the roof adjacent to the skylight buckled and the worker fell through.); *Grammar*, 911 So. 2d at 622-23 (¶8) ("[W]hen a danger exists, which is inherent to the work the independent contractor is employed to perform, or which arises from or is intimately connected with the work to be performed, the employer's duty to protect the contractor is absolved.").

¶35. In the case before us, we likewise find the circuit court correctly concluded that *Vu* and *Peak* are controlling in this case, and Rhodes's fall through the framed opening was "intimately connected" to the work he was hired to do. Rhodes was in the building's attic to locate and repair water leaks in the roof. He was searching for leaks when he fell through the framed opening in the attic floor. "Clearly, the risk of falling through the ceiling arose from or was intimately connected with that enterprise." *Vu*, 765 So. 2d at 1256 (¶14).

¶36. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**